## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and THE STATES OF COLORADO, GEORGIA, MICHIGAN, NORTH CAROLINA, TEXAS, AND WASHINGTON, *ex rel.* JULIANNE NUNNELLY and MATTHEW SHANKS, and THE STATES OF MAINE, NEBRASKA, OHIO, OREGON, and WYOMING, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:20-cv-11401-PBS |
| v. | ) ) | |
| REGENERON PHARMACEUTICALS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## CONSOLIDATED COMPLAINT OF THE INTERVENING NON-QUI TAM STATES AGAINST REGENERON PHARMACEUTICALS, INC.

On June 17, 2025, the Court granted the motion of the States of Maine, Nebraska, Ohio, Oregon, and Wyoming (hereafter jointly referred to as "the Intervening States" or "Non-qui tam States") to intervene as plaintiffs in this action pursuant to Federal Rule of Civil Procedure 24. The Intervening States re-allege and incorporate by reference the allegations made in the United States' Complaint in Intervention Against Regeneron Pharmaceuticals filed on March 28, 2024, (Dckt. No. 58, hereinafter referred to as the "U.S. Complaint in Intervention") in the above-captioned case on a paragraph-by-paragraph basis as set forth below. The Intervening States further allege as follows with respect to Defendant Regeneron Pharmaceuticals, Inc. ("Regeneron"):

### Introduction

1.      This is a civil action brought by the Intervening States against Regeneron, which manufactures Eylea, a drug that is medically indicated to treat forms of macular degeneration and

other ophthalmological conditions. The Intervening States bring this action to recover treble damages and civil penalties under their respective state false claims acts and the common law.

2.      Since bringing Eylea to market in late 2011 and continuing until the present, Regeneron has paid hundreds of millions of dollars to subsidize Eylea purchases by reimbursing distributors for credit card processing fees—on the condition that the distributors use these payments to lower the effective price they charged for Eylea to doctors and retina practices using credit cards. From 2012 to 2021, Regeneron's credit card fee reimbursements for Eylea purchases exceeded $250 million to just one of its several distributors. Regeneron paid those fees so that doctors and retina practices that purchased Eylea could use credit cards at no additional cost and obtain hundreds of millions of dollars in "cash back" rewards and other credit card benefits on their Eylea purchases. Regeneron's subsidy payments were price concessions that Regeneron should have included in its price reporting to the Centers for Medicare and Medicaid Services ("CMS") for Eylea. However, Regeneron knowingly excluded the credit card processing fee payments in its price reports to CMS, thereby falsely inflating Medicare reimbursement for Eylea.

3.      The Intervening States' Medicaid programs relied on Regeneron's price reports to CMS in their respective State Medicaid programs' Eylea reimbursement methodologies. Therefore, Regeneron's exclusion of the credit card processing fee payments in its price reports to CMS also falsely inflated the Intervening States' Medicaid reimbursement for Eylea. Regeneron's conduct, and the resulting harm to the Intervening States' Medicaid programs, is ongoing.

4.      The Intervening States re-allege and incorporate by reference the allegations made in Paragraphs 3 through 15 of the U.S. Complaint in Intervention.

5.      The Intervening States' Medicaid programs reimburse physician-administered drugs based on the Average Sales Price ("ASP") as reported by the manufacturers and published

by CMS. *See* Maine Medicaid State Plan under Title XIX of the Social Security Act for the Medical Assistance Program and C.M.R. 10, Div. 144, ch. 101, ch. II, sec. 144-101-II-90, subsec. 144-101-II-90.09; Nebraska State Plan Under Title XIX of the Social Security Act for the Medical Assistance Program[1] and 471 NAC Ch. 18, § 005.22 (eff. July 10, 2022); Ohio Medicaid State Plan Under Title XIX of the Social Security Act for the Medical Assistance Program[2] and O.A.C. Rule 5160-4-12(F)(1)(c); Oregon Revised Statute (ORS) 413.042 and Oregon Administrative Rule 410-120-1340(6)(b)(D); Wyo. Medicaid State Plan Under Title XIX of the Social Security Act Medical Assistance Program[3] and Rules, Wyo. Dep't of Health, Medicaid (Wyo. Medicaid Rules), Ch. 3, § 11(b) (Apr. 7, 2022), Ch. 33, § 2(b) (Apr. 26, 2019). Therefore, in the same way an overstated ASP inappropriately increases the reimbursement amount for each claim submitted to Medicare, so does an overstated ASP inappropriately increase the reimbursement amount for each claim submitted to the Intervening States' Medicaid programs.

6.    Regeneron thus knowingly submitted false ASP reports and inflated the amount that the Intervening States' Medicaid programs have paid and continue to pay for Eylea claims, causing the submission of tens of thousands of false claims to the Intervening States' Medicaid programs, and resulting in millions of dollars in damages and civil remedies to the Intervening States.

---

[1] Nebraska Medicaid State Plan, Section 4.0, General Program Administration, Attachment 4.19-B, Item 12a, Page 2 of 2: NEB. DEP'T OF HEALTH AND HUMAN SERVICES, *Medicaid State Plan*, https://dhhs.ne.gov/Medicaid%20State%20Plan/Attachment%204.19b%20Item%2012a%20-%20Prescribed%20drugs.pdf (last visited Sept. 16, 2024).  On February 28, 2023, CMS approved a Nebraska State Plan Amendment (SPA) to attachment 4.19-B of the state plan with an effective date of November 11, 2022.  The plan amendment allows for a technical adjustment, noting that physician-administered drugs are paid at the Medicare drug fee schedule rate rather than the average sales price + 6% if the drug is listed on the Medicare drug fee schedule.  *See* CENTERS FOR MEDICAID & MEDICAID SERVICES, https://www.medicaid.gov/medicaid/spa/downloads/NE-22-0016.pdf (last visited Sept. 16, 2024).

[2] Ohio Medicaid State Plan, Section 4.0, General Program Administration, Attachment 4.19-B, Item 12-a, Page 4 of 4: https://dam.assets.ohio.gov/image/upload/medicaid.ohio.gov/Stakeholders,%20Partners/MedicaidStatePlan/Sections/GPA/Attachment%20B%20-20Methods%20and%20Standards%20for%20Establishing%20Payment%20Rates.pdf

[3] Wyo. Medicaid State Plan, General Program Administration, Attachment 4.19B, Item 12.a.8, TN No. 17-002 https://health.wyo.gov/healthcarefin/medicaid/ spa/, (last accessed Sept. 17, 2024).

## Jurisdiction and Venue

7.      This Court has subject matter jurisdiction over the original action under 28 U.S.C. § 1345 and has jurisdiction over the Intervening States' causes of action pursuant to 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

8.      The Court may exercise personal jurisdiction over Regeneron, and venue is appropriate in this Court under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b), because some of the false or fraudulent acts committed by Regeneron occurred in this District.

## Parties

9.      The State of Maine, by and through the Office of the Maine Attorney General, brings this action pursuant to the Maine False Claims Act (Title 22 Maine Revised Statutes § 15) as well as pursuant to common law causes of action. The Maine Department of Health and Human services, an agency of the State of Maine, administers the State's Medicaid program on behalf of the State of Maine. The Maine Attorney General's Medicaid Fraud Control Unit ("ME MFCU") has authority to investigate and prosecute any criminal or civil violations of law related to the Maine Medicaid Program.

10.     The State of Nebraska, by and through the Office of the Nebraska Attorney General, brings this action pursuant to the Nebraska False Medicaid Claims Act ("NMFCA"). The Nebraska Department of Health and Human Services ("NDHHS"), an agency of the State of Nebraska, administers the Nebraska Medicaid program. The Nebraska Attorney General's Medicaid Fraud and Patient Abuse Unit ("MFPAU"), the state's Medicaid fraud control unit, has authority to investigate and prosecute any criminal or civil violations of law related to the Nebraska Medicaid program. *See* Neb. Rev. Stat. §§ 68-942 to 944.

11.     The State of Ohio, by and through the Office of the Ohio Attorney General, brings this action pursuant to common law causes of action. The State of Ohio participates in the Medicaid program pursuant to 42 U.S.C. § 1396(a) and Ohio Administrative Code Chapter 5160. The Ohio Department of Medicaid ("ODM"), an agency of the State of Ohio, administers the State's Medicaid program on behalf of the State of Ohio. The Ohio Attorney General's Medicaid Fraud Control Division ("OH MFCU") has authority, pursuant to O.R.C. § 109.85, to investigate and prosecute any criminal or civil violations of law related to the Ohio Medicaid program.

12.     The State of Oregon, acting through the Oregon Department of Justice ("Oregon"), brings this action pursuant to the Oregon Attorney General's authority to bring civil claims on behalf of the State and under the Oregon False Claims Act. ORS 180.060; ORS 180.760. The Oregon Health Authority is the Oregon agency that administers the Oregon Medicaid Program.

13.     The State of Wyoming, through the Wyoming Attorney General, Medicaid Fraud Control Unit brings this action under the Wyoming Medicaid False Claims Act. Wyo. Stat. Ann. §§ 42-4-301 to -306. The Wyoming Department of Health administers Wyoming's Medicaid program. Wyo. Stat. Ann. § 42-4-104(a)(i).

## Background

14.     The Intervening States re-allege and incorporate by reference the allegations made in Paragraphs 20 through 24 of the U.S. Complaint in Intervention.

## I.    The Intervening States' Medicaid Programs

15.     Medicaid is a joint federal-state program that provides health care benefits, including, but not limited to, prescription drug coverage, to qualified groups such as the elderly, impoverished or disabled. The federal government offers funding to state Medicaid programs provided they meet certain minimum requirements set forth under the federal Medicaid statute.

*See* 42 U.S.C. § 1396a. The amount of federal funding afforded to each state's Medicaid program, otherwise known as the Federal Medical Assistance Percentage ("FMAP"), is based on each state's per capita income compared to the national average. *Id*. § 1396d(b). Each state pays the remaining balance that the FMAP funds do not cover out of the state's budget ("State Share").

16.     Each state Medicaid program is required to implement a "State Plan" containing certain specified minimum criteria for coverage and payment of claims in order to qualify for federal funds for Medicaid expenditures. *See* 42 U.S.C. § 1396a.

### A. The Maine Medicaid Program

17.     The Maine Department of Health and Human Services ("ME DHHS") is responsible for the administration and supervision of the Maine Medicaid Program (also known as "MaineCare") in compliance with federal and state statutes, and for administrative policies. Authority for the Department of Health and Human Services to accept and administer any funds which may be available from private, local, state, or federal sources for the provision of Medicaid benefits is established by Title 22 Maine Revised Statutes § 3173, whence also comes ME DHHS' rule-making authority to adopt, review, amend, and rescind regulations regarding the administration of MaineCare. Promulgated rules regarding the MaineCare program are codified by ME DHHS in the MaineCare Benefits Manual (found at 10-144 Code of Maine Rules chapter 101).

18.     Pursuant to said statute and by said rulemaking authority, ME DHHS determines the types and extent of healthcare services to be provided to Maine Medicaid recipients and the reasonable fees and payment to be paid to health care providers for the provision of healthcare services to MaineCare recipients. The MaineCare program reimburses participating providers for approved injectable pharmaceuticals provided to MaineCare recipients (including Eylea) by a so-

called "fee-for-service" or "FFS" system, whereby providers file claims directly with MaineCare by submitting claims electronically to ME DHHS.

19.    Compliance with both MaineCare's Benefits Manual (the regulations promulgated by ME DHHS) and MaineCare's Provider Agreement (the contract governing the relationship between ME DHHS and MaineCare providers) is a material precondition of payment of MaineCare claims, as is compliance with applicable statutes, regulations, and guidelines.

20.    ME DHHS has the authority to determine which prescription and over-the-counter drugs are subject to reimbursement and coverage under the MaineCare program pursuant to Title 22 Maine Revised Statutes § 3174-M. MaineCare will only pay for prescription drugs like Eylea that are actually dispensed and which were medically necessary, and will pay no more than the usual and customary fee charged for other recipients of the same drug.

21.    The MaineCare program reimburses healthcare providers for their administration of Eylea across several iterations/formulations (distinct National Drug Codes, or "NDCs") for several diagnoses generally related to macular degeneration. The rate at which MaineCare pays for physician-administered drugs such as Eylea is calculated by reference to the average price that a manufacturer sells drugs after accounting for any credits, chargebacks, discounts, and rebates applied throughout the sales process – also known as the Average Sales Price, or "ASP." Specifically, MaineCare has reimbursed its providers for Eylea at ASP plus 6% during the term of the covered conduct.

22.    Reimbursement of providers for their administration of Eylea by the MaineCare program is funded in part by the State of Maine and in part by the federal government along a ratio re-determined annually (the Federal Medical Assistance Percentage, or "FMAP").

**B. The Nebraska Medicaid Program**

23.     In Nebraska, the Medicaid program provides health care services to low-income adults and children offered through fee-for-service ("FFS") and through Medicaid Managed Care Organizations ("MCOs") (all referred to hereafter, collectively, as "Nebraska Medicaid"). *See* Neb. Rev. Stat. §§ 68-904–905; 471 Neb. Admin. Code Ch. 1 (2020); 482 Neb. Admin. Code § 1-001.01 (2020); 482 Neb. Admin. Code §§ 1-002.29, 1-002.36.

24.     The Nebraska Department of Health and Human Services ("NDHHS") is the single state agency responsible for the administration and supervision of Nebraska Medicaid. Neb. Rev. Stat. § 68-908. NDHHS is empowered to promulgate rules necessary for administering its programs, including Medicaid. *Id.* Accordingly, NDHHS sets the rules for the provision of medical services to Nebraska Medicaid recipients, also called beneficiaries, the circumstances in which providers can become enrolled in Nebraska Medicaid, and how Nebraska Medicaid reimburses providers for these claims.

25.     To participate in and receive reimbursement payments from Nebraska Medicaid, in general health professionals and companies providing services to Medicaid recipients must apply for and enter into a provider agreement with NDHHS in which the provider contractually agrees to comply with all applicable state and federal statutes, regulations, and guidelines. 42 C.F.R. § 431.107; 471 Neb. Admin. Code § 2-003.02(B) (2020). If approved, the provider is assigned a unique provider number ("NPI"), which allows the provider to submit claims for payment to Nebraska Medicaid for services rendered to Medicaid recipients. 471 Neb. Admin. Code § 2-003.02(C).

26.     A claim is "any request or demand, whether under a contract or otherwise, for money or property, and whether or not the state has title to the money or property, that: (a) Is

presented to an officer, employee, or agent of the state; or (b) Is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the state's behalf or to advance a state program or interest, and if the state: (i) Provides or has provided any portion of the money or property requested or demanded; or (ii) Will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." Neb. Rev. Stat. § 68-935. *But see also* 471 Neb. Admin. Code § 3-002.04 (claim defined as "[a] request for payment for services rendered or supplied by a provider to a client"); 482 Neb. Admin. Code § 1-002.09 (claim defined as "[a] bill for services, a line item of service, or all services for one client within a bill").

27.    Providers submit claims for reimbursement to Nebraska Medicaid. Medicaid claims submitted directly to NDHHS are paid directly by NDHHS under an FFS system. Pursuant to § 1932(a)(1)(A) of the Social Security Act, state Medicaid programs may partially delegate administration to Medicaid Managed Care Entities ("MCEs"), generally called MCOs in Nebraska. The MCOs help administer health plans and process and pay Medicaid claims to their contracted providers on behalf of Nebraska Medicaid.

28.    As part of its federally approved state plan, NDHHS contracts with MCOs. NDHHS allocates a capitated sum of money to the MCOs to pay Medicaid recipients' benefits. *See* 482 Neb. Admin. Code §§ 1-001-002; 482 Neb. Admin. Code §§ 4-001–002. The MCOs must conform to the requirements of 42 U.S.C. §§ 1395mm and 1396b(m), along with any related state and federal rules and regulations, as well as furnish medical and health related services pursuant to the state plan. 42 U.S.C. § 1396u-2. All funds administered through Nebraska Medicaid, including MCOs, are paid for by the federal and state governments using dedicated Medicaid program dollars. *See* 482 Neb. Admin. Code §§ 1-001-002; 482 Neb. Admin. Code §§ 4-001–002.

29.     Nebraska reimburses providers such as physicians on a per-claim basis for the cost of medical services and supplies, including certain physician-administered drugs like Eylea.  *See* 471 Neb. Admin. Code § 18-005.22. The NDHHS determines a reasonable rate for these reimbursements. *See* Neb. Rev. Stat. §§ 68-908(2) and 68-950–956; 471 Neb. Admin. Code § 1-002; 471 Neb. Admin. Code § 3-003.02(D); 471 Neb. Admin. Code §§ 18-004.02(B) and 18-005.22.

30.     For physician-administered drugs like Eylea, NDHHS has determined that "[p]ractitioner administered injectable medications will be reimbursed at average sales prices (ASP) plus 6%, consistent with the Medicare Drug Fee Schedule. Injectable medications not available on the Medicare Drug Fee Schedule will be reimbursed at whole acquisition cost (WAC) plus 6.8%, or manual pricing based on the provider's actual acquisition cost. Practitioner administered injectable medications, including specialty drugs, purchased through the Federal Public Health Service's 340B Drug Pricing Program will be reimbursed at the 340B actual acquisition cost and no more than the 340B ceiling price." 471 Neb. Admin. Code § 18-005.22.

31.     In addition, for drugs administered by a physician at an office visit, "When billing for medications administered during the course of a clinic visit, the physician must use the appropriate Health Care Common Procedure Coding System (HCPCS) procedure code for the medication, the correct number of units per the Health Care Common Procedure Coding System (HCPCS) description, the National Drug Code (NDC) of the drug administered, the National Drug Code (NDC) 'unit of measure' and the number National Drug Code (NDC) units. A Current Procedural Terminology (CPT) code for the administration must also be submitted. When billing for medication which does not have a specific Level I or II code, the physician must use a miscellaneous Health Care Common Procedure Coding System (HCPCS) code with the name and

National Drug Code (NDC) number identifying the drug and include the dosage given." *Id.* The HCPCS code for Eylea is J0178.

32.     Eylea has had a published ASP at all relevant time periods, and therefore, Nebraska's Medicaid program has reimbursed providers, including Regeneron customers, using an ASP-based reimbursement methodology for claims submitted for Eylea.

**C. The Ohio Medicaid Program**

33.     The Ohio Department of Medicaid ("ODM") is responsible for the administration and supervision of the Ohio Medicaid program. O.R.C. § 5160 *et seq*. The Ohio Revised Code grants rule-making authority to ODM to adopt new rules, review, amend, and rescind current rules. O.R.C. § 5160.02. Rules become part of the Ohio Administrative Code Chapter 5160 and assist ODM in executing its duty to carry out provisions of the Ohio Revised Code. Accordingly, ODM sets the rules for the provision of medical services to Ohio Medicaid recipients, the circumstances in which providers can become enrolled in Ohio Medicaid, and how Ohio Medicaid reimburses providers for these claims.

34.     To participate in and receive reimbursement payments from the Ohio Medicaid program, a health care professional or company providing services to Medicaid recipients must apply for and enter into a "provider agreement" with ODM in which the provider contractually agrees to comply with all applicable state and federal statutes, regulations, and guidelines. 42 C.F.R. § 431.107; O.A.C. Rule 5160-1-17.2. If approved, each provider is then assigned a unique provider number, which allows the provider to submit claims for payment to the Ohio Medicaid program for services rendered to Medicaid recipients. A "claim" is defined as "(1) a bill for services, (2) a line item of service, or (3) all services for one beneficiary [recipient] within a bill." 42 C.F.R. 447.45.

35.    Providers submit claims for reimbursement to the Ohio Medicaid program. Medicaid claims submitted directly to ODM are paid directly by ODM under a Fee for Service ("FFS") system. Pursuant to § 1932(a)(1)(A) of the Social Security Act, state Medicaid programs may partially delegate administration to Medicaid Managed Care Entity ("MCE"), which help administer health plans and process and pay Medicaid claims to its contracted providers on behalf of Medicaid. As part of its federally approved state plan, ODM has elected to contract with MCEs. ODM allocates a capitated sum of money to the MCEs to pay the Medicaid recipient's benefits. The MCEs must conform to the requirements of 42 U.S.C. §§1395mm and §1396b(m), along with any related state and federal rules and regulations, as well as furnish medical and health-related services pursuant to the state plan. 42 U.S. Code § 1396u-2. All funds administered through the Ohio Medicaid program, including Medicaid MCEs, are paid for by the federal and state governments using dedicated Medicaid program dollars.

36.    Pursuant to the rules and regulations of the Ohio Medicaid program, which includes ODM and Medicaid MCEs, Medicaid will only pay for services that were actually performed by qualified individuals, which were medically necessary, bill for no more than the usual and customary fee charged other recipients for the same service, and provided in accordance with federal and state laws, rules and regulations. O.A.C. Rule 5160-1-17.2(A).

37.    As a condition of payment, an Ohio Medicaid provider furnishes and certifies certain information on the claim submission form, including the identity of the patient, the unique provider number, the service for which the provider is billing Medicaid, the provider who is billing the service, and the provider who has performed the service, along with the value billed for the service provided. The Ohio Medicaid program relies on providers complying with the terms of the provider agreement on an ongoing basis, and specifically in their submission of claims for

payment. Providers are expected to submit truthful and accurate claims. Claims tainted by fraud or inducements are ineligible for payment and punishable by criminal and/or civil action.

38.    Medical care and services, including physician-administered prescription drugs like Eylea, are reimbursed by the State of Ohio after claims are submitted by providers to the Ohio Medicaid program.

39.    Regeneron's customers,[4] including Ohio providers, submit claims for Eylea to the Ohio Medicaid program (fee-for-service and MCEs) using either a paper claim form known as CMS 1500 or an electronic claims form known as 837 Professional. Among the information the provider includes on the respective CMS 1500 / 837 Professional form are certain HCPCS Level II codes, which identify the services rendered for which reimbursement is sought. The HCPCS code for Eylea is currently J0178. Ohio fee-for-service provider claims are processed electronically using the Ohio Medicaid Enterprise System ("OMES") or the previous operating Medicaid Information Technology System ("MITS"). Ohio provider Medicaid MCE claims are processed electronically using OMES; alternatively, MCE claims may be processed electronically through direct data entry to the MCEs with ODM receiving encounter claims submission from the MCE.

40.    Ohio Medicaid covers injectable drugs and biological products administered by a physician in the office, clinic setting, and in the recipient's home. For any injectable drug, including Eylea, that a practitioner purchases directly through a pharmacy, distributor or wholesaler which is administered in the office, clinic setting, or the recipient's home, the injectable drug is considered a medical service rather than a pharmacy service. Once the Ohio Medicaid program receives a provider claim for Eylea and confirms that any applicable prior authorization

---

[4] As used herein and throughout the Intervening States' Consolidated Complaint, the term "customers" has the same meaning as defined in the U.S. Complaint in Intervention at ¶4.

13

criteria have been satisfied, Ohio Medicaid reimburses the provider based upon the reimbursement methodology set forth in O.A.C. Rule 5160-4-12(F).

41.    The Ohio Administrative Code Rule 5160-4-12(F) sets forth the following reimbursement methodology for claims submitted by providers for physician-administered drugs like Eylea:

(1) On the department's web site, http://medicaid.ohio.gov, is a list of vaccines, toxoids, skin substitutes, and other provider-administered pharmaceuticals each of which is covered by Medicaid either as a medical service or as a VFC-designated vaccine. Payment for a covered non-VFC vaccine, toxoid, skin substitute, or other provider-administered pharmaceutical is the lesser of the provider's submitted charge or the first applicable item from the following ordered list:

a.    An amount specified in or determined in accordance with the Administrative Code;

b.    The state maximum allowable cost ("SMAC"), which is defined in rule 5160-9-05 of the Administrative Code;

c.    The payment limit shown in the current Medicare part B drug pricing file, which is available at http://www.cms.gov;

d.    One hundred seven per cent of the wholesale acquisition cost ("WAC"); or,

e.    Eighty-five and six-tenths per cent of the average wholesale price ("AWP").

42.    Pursuant to the Ohio Medicaid State Plan Under Title XIX of the Social Security Act for the Medical Assistance Program[5] and O.A.C. Rule 5160-4-12(F)(1)(c), physician-

---

[5]Ohio Medicaid State Plan, Section 4.0, General Program Administration, Attachment 4.19-B, Item 12-a, Page 4 of 4: https://dam.assets.ohio.gov/image/upload/medicaid.ohio.gov/Stakeholders,%20Partners/MedicaidStatePlan/Sections/GPA/Attachment%20B%20-20Methods%20and%20Standards%20for%20Establishing%20Payment%20Rates.pdf

administered drugs and biologicals, in this case Eylea, are reimbursed in accordance with the payment limit shown in the Medicare Part B pricing file. This reimbursement methodology for ASP has been effective in Ohio from 2008 to current, fully encompassing Ohio's covered conduct period. CMS requires drug manufacturers to report the ASP of each of their Part B drugs on a quarterly basis and relies on manufacturers to truthfully and accurately report ASP. 42 C.F.R. § 414.804(a)(5). The Ohio Medicaid published Fee Schedule and Rates is based upon the Medicare Part B ASP drug pricing files supplied by CMS with updates on a quarterly basis. https://medicaid.ohio.gov/resources-for-providers/billing/fee-schedule-and-rates/schedules-and-rates (last accessed May 1, 2025). Ohio's Department of Medicaid and MCEs thus rely upon Ohio Medicaid's published Fee Schedule and Rates in determining reimbursement rates for Eylea and, by extension, rely on Eylea's ASP as reported by Regeneron to CMS.

43.     Eylea has had a published ASP at all relevant time periods and, therefore, Ohio's Medicaid program has reimbursed providers, including Regeneron customers, using an ASP-based reimbursement methodology for claims submitted for Eylea.

**D.  The Oregon Medicaid Program**

44.     The Oregon Health Authority ("OHA"), is the Oregon state agency responsible for the administration and supervision of the Oregon Medicaid program. ORS 413.032. OHA determines the types and extent of healthcare services to be provided to Oregon Medicaid recipients and the reasonable fees and payment to be paid to health care providers for the provision of healthcare services to Oregon Medicaid recipients. ORS 414.065. The Oregon Medicaid program reimburses participating providers for approved injectable pharmaceuticals they provide to Medicaid recipients, including Eylea. HHS periodically reimburses OHA for the federal share

of all qualified Oregon Medicaid claims and ensures that the state complies with minimum standards in the administration of the program.

45.    To participate in and receive reimbursement payments from the Oregon Medicaid program, Medicaid providers must enter into a "provider enrollment agreement" with OHA in which the provider agrees that all services billed to Oregon Medicaid are medically necessary and provided in compliance with all applicable federal and state statutes, rules and regulations.

46.    OHA receives, processes, and pays provider claims for healthcare services provided to some Oregon Medicaid recipients directly, including claims for physician administered drugs like Eylea. These Oregon Medicaid recipients covered directly by OHA are called "fee-for-service" or "FFS" Medicaid recipients, and the payments made by OHA to pay for claims by providers for their healthcare are called "fee-for-service claims" or "FFS claims."

47.    For other Oregon Medicaid recipients, OHA contracts with managed care organizations called "coordinated care organizations" or "CCOs" to provide healthcare services to covered Medicaid recipients. These CCOs receive, process, and pay provider claims for healthcare services provided to their enrolled Medicaid recipients, including claims for reimbursement for physician administered drugs like Eylea.

48.    Providers bill OHA for services provided to FFS Medicaid recipients by submitting claim forms electronically to OHA. Providers bill the appropriate CCO for services provided to Medicaid recipients enrolled in CCO Medicaid coverage by submitting claim forms to the CCO. For both FFS and CCO claims, Regeneron's customers that are Oregon Medicaid providers must submit CMS 1500 form or its electronic equivalent, known as the 837P form, for claims for reimbursement for Eylea. Among information the provider includes on the CMS 1500 or the 837P form are certain five-digit codes, including HCPCS Level II codes, which identify the services

16

rendered for which reimbursement is sought. The HCPCS code for Eylea during the relevant period was and is J0178.

49.     OHA and the contracted CCOs require compliance with the terms of the claim form as a precondition of payment. The Oregon Medicaid program also requires compliance with program policies, along with applicable statutes, regulations and guidelines, as a precondition of government payment or reimbursement.

50.     OHA establishes the methodology for determining the reimbursement amount for Eylea provided to FFS Medicaid patients. At all relevant times, OHA set the reimbursement rate for Elyea claims using HCPCS Code J0178 as the same as the Medicare reimbursement rate: ASP plus six percent (6%). At all relevant times and currently, this rate setting methodology has been codified in Oregon Administrative Rule 410-120-1340(6)(b)(D) and, beginning on and continuing since January 1, 2013, was reflected in in the Oregon Medicaid Dental and Medical Assistance Program ("DMAP") fee schedule.

51.     Oregon CCOs that paid provider claims for Eylea reimbursement using HCPCS code J0178 during the relevant period also reimbursed at the same Medicare rate of ASP plus six percent (6%).

52.     Eylea has had a published ASP at all relevant time periods and, therefore, the Oregon Medicaid program has reimbursed providers, including Regeneron customers, using an ASP-based reimbursement methodology for every claim submitted for Eylea.

### E.  The Wyoming Medicaid Program

53.     The Wyoming Department of Health (WDH) administers the Wyoming Medicaid Program. Wyo. Stat. Ann. § 42-4-104(a)(i). Wyoming Medicaid payments cover the "reasonable charges assessed by any authorized provider of services and supplies … consistent with limitations

and reimbursement methodologies established by the [WDH,] which are provided on behalf of a qualified recipient." Wyo. Stat. Ann. §§ 42-4-102(a)(ii), 42-4-104(a)(ii). The WDH issues rules and regulations that govern the Wyoming Medicaid Program. Wyo. Stat. Ann. § 42-4-104(a)(iv).

54.    The State of Wyoming reimburses physicians on a per-claim basis for the cost of medical services and supplies, including certain physician-administered drugs like Eylea. The WDH determines a reasonable rate for these reimbursements. Wyo. Stat. Ann. § 42-4-104(b)(v).

55.    A claim is "any request or demand under the Medicaid program, whether under a contract or otherwise, for money, property or services that: (A) Is presented to an officer, employee or agent of the state or a political subdivision of the state; or (B) Is made to a contractor, grantee or other recipient, if the money or property is to be spent or used on the state's behalf or to advance a state program or interest, and if the state provides or has provided any portion of the money or property requested or demanded." Wyo. Stat. Ann. § 42-4-302(a)(i).

56.    Pursuant to 42 C.F.R. § 431.18, Wyoming regulations authorize and require that the WDH "issue manuals and bulletins" to interpret Wyoming Medicaid's statutes and rules. Wyo. Medicaid Rules, Ch. 10 (Pharmaceutical Services), § 2(b) (Mar. 25, 2019) (readopted Apr. 10, 2025). The WDH may establish requirements for prior authorization of certain claims through these manuals and bulletins. *Id.* § 13(a), (b)(i), (b)(iii). These requirements are disseminated to Wyoming Medicaid providers through the manuals and bulletins. *Id.* The current provider manual is available on the WDH Medicaid Pharmacy program's website, historical manuals are available upon request.

57.    Wyoming also requires compliance with program policies, along with applicable statutes, regulations, and guidelines, as a precondition of government payment or reimbursement.

58.     Wyoming Medicaid covers the cost of drugs purchased for use in an outpatient office setting when the drug is purchased by the same provider administering the drug. Wyoming Medicaid's State Plan describes Wyoming's reimbursement methodology for physician-administered drugs.

59.     Regeneron's customers, including Wyoming providers, submit claims for Eylea to Wyoming Medicaid, using claim form known as CMS 1500. Among information the provider includes on the CMS 1500 form are certain five-digit codes, including HCPCS Level II codes, which identify the services rendered and for which reimbursement is sought. Wyoming Medicaid providers submit CMS-1500 claims electronically through the Benefit Management System or by submitting a CMS-1500 claim form. All claims must identify the corresponding prior authorization and HCPCS code. The HCPCS code for Eylea is J0178.

60.     Once WDH receives a provider claim for Eylea and confirms that necessary prior authorization criteria have been satisfied, WDH reimburses the provider "at 100 percent of the Average Sales Price (ASP)." Wyo. Medicaid State Plan, Attach. 4.19B, Item 12.a.8, TN No. 17-002.[6] Physician-administered drugs "without an ASP on the CMS reference file will be reimbursed at an aggregate Wholesale Acquisition Cost (WAC) + 0% for the pertinent HCPCS code. PADS without and ASP or WAC will be reimbursed at an aggregate AWP for the HCPCS code." *Id*.

61.     Eylea has had a published ASP at all relevant time periods. Wyoming Medicaid provides an online fee schedule that includes the rate, start date, and end date for all reimbursed

---

[6] Wyo. Medicaid State Plan, General Program Administration, Attachment 4.19B, Item 12.a.8, TN No. 17-002 https://health.wyo.gov/healthcarefin/medicaid/spa/, (last accessed May 2, 2025).

codes.[7] The fee schedule shows that Wyoming's Medicaid program reimbursed Regeneron's customers using the ASP for the providers' Eylea claims.

## II.    ASP and Reimbursement Rates for Medicare Part B Drugs

62.    The Intervening States re-allege and incorporate by reference the allegations made in Paragraphs 25 through 30 of the U.S. Complaint in Intervention.

## III.    History of ASP Methodology

63.    The Intervening States re-allege and incorporate by reference the allegations made in Paragraphs 31 through 36 of the U.S. Complaint in Intervention.

## IV.    The Federal False Claims Act

64.    The Intervening States re-allege and incorporate by reference the allegations made in paragraphs 37 through 40 of the U.S. Complaint in Intervention.

## V.    The Intervening States' State Statutes

65.    Each of the Intervening States has its own state statute that imposes liability for, among other things, knowingly submitting, or causing to be submitted, false or fraudulent claims to the States' Medicaid programs, and for knowingly making, using, or causing to be made or used, false records or statements material to false or fraudulent claims made to the States' Medicaid programs. However, where the state statute is inapplicable to this set of facts, that respective state relies upon common law causes of action for imposing liability as described herein.

### A.    Maine

66.    Maine is proceeding on both common law and Maine's false claims statute as codified at Title 22 Maine Revised Statutes § 15 ("MFCA"). The MFCA, in relevant part, provides:

> Any person, firm, association, partnership, corporation or other legal entity who makes or causes to be made or presents or causes to be presented for payment or approval any claim

---

[7] Wyoming Medicaid, Fee Schedules, https://www.wyomingmedicaid.com/portal/fee-schedules (last visited Sept. 18, 2024).

upon or against the [Department of Health and Human Services] or upon any funds administered by the department, knowing such claim to be materially false, fictitious or fraudulent, or who knowingly makes any false written statement or knowingly submits any false document material to a false, fictitious or fraudulent claim or who knowingly enters into any agreement, combination or conspiracy to defraud the department by obtaining the payment or approval of any materially false, fictitious or fraudulent claim or who knowingly makes or causes to be made a false written statement or record material to an obligation to pay or transmit money or property to the department or knowingly conceals or knowingly and improperly materially avoids or materially decreases an obligation to pay or transmit money or property to the department is, in addition to any criminal liability that may be provided by law, subject to civil suit by this State […]

67.    The MFCA further provides that, for purposes of the Act, "'knowing' and 'knowingly' means that, with respect to information, a person has actual knowledge of the information, acts in deliberate ignorance of the truth or falsity of the information or acts in reckless disregard of the truth or falsity of the information. A person may act knowingly without specific intent to defraud." *Id.*

68.    Penalties under the MFCA include restitution, interest, civil penalties up to three times the amount of the false claims (but no less than $2,000 for each false claim or for each document submitted in support thereof, whichever is greater), costs of investigation and suit, and attorneys' fees.

69.    The Maine Attorney General is authorized to prosecute all claims for the State of Maine pursuant to Title 5 Maine Revised Statutes § 192.

### B.    Nebraska

70.    Nebraska is proceeding under its False Medicaid Claims Act ("FMCA"), Neb. Rev. Stat. §§ 68-934, *et seq.*, and also common law claims against Regeneron.

71.    Nebraska's FMCA is similar to the federal False Claims Act. Nebraska's FMCA states, in relevant part, that a person presents a false Medicaid claim and is subject to civil liability if such person:

(a) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (b) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (c) Conspires to commit a violation of the False Medicaid Claims Act; (d) Has possession, custody, or control of property or money used, or to be used, by the state and knowingly delivers, or causes to be delivered, less than all of the money or property; (e) Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, makes or delivers the receipt knowing that the information on the receipt is not true; (f) Knowingly buys, or receives as a pledge of an obligation or debt, public property from any officer or employee of the state who may not lawfully sell or pledge such property; or (g) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or knowingly conceals, avoids, or decreases an obligation to pay or transmit money or property to the state."

Neb. Rev. Stat. §§ 68-936(1).

72.     Under Nebraska's FMCA, knowing or knowingly means that "a person, with respect to information: (i) Has actual knowledge of such information; (ii) Acts in deliberate ignorance of the truth or falsity of such information; or (iii) Acts in reckless disregard of the truth or falsity of such information." Neb. Rev. Stat. § 68-935(4)(a). The State is not required to prove specific intent to defraud under the FMCA. Neb. Rev. Stat. § 68-935(4)(b).

73.     For purposes of Nebraska's FMCA, "material" means "having a natural tendency to influence or be capable of influencing the payment or receipt of money or property." Neb. Rev. Stat. § 68-935(5).

74.     The State's Attorney General may bring a civil action against any person who violates Nebraska's FMCA to recover actual damages and civil penalties. Nebraska's FMCA permits the State to recover treble damages, a civil penalty up to $10,000.00 per false claim, as well as attorney fees and costs if the State is the prevailing party in a civil action. Neb. Rev. Stat. §§ 68-936(2)-(3).

### C.     Ohio

75.     Ohio is proceeding on common law claims against Regeneron.

22

### D.    Oregon

76.    The Oregon False Claims Act ("OFCA") is modeled after the federal False Claims

Act. The OFCA, in relevant part, states that a "person may not":

> (a) Present for payment or approval, or cause to be presented for payment or
> approval, a claim that the person knows is a false claim.
> (b) In the course of presenting a claim for payment or approval, make or use, or
> cause to be made or used, a record or statement that the person knows to contain,
> or to be based on, false or fraudulent information.
> (c) Agree or conspire with other persons to present for payment or approval a
> claim that the person knows is a false claim.
> . . .
> (i) Fail to disclose a false claim that benefits the person within a reasonable time
> after discovering that the false claim has been presented or submitted for payment
> or approval.

ORS 180.755(1).

77.    The OFCA defines a "claim," in relevant part, as "a request or demand made to a

public agency, . . . that seeks moneys, property, services or benefits that will be provided in whole

or in part by a public body, whether directly or through reimbursement of another public agency

that provides the moneys, property, services or benefits." ORS 180.750(1).

78.    The OFCA defines a "false claim" as a claim that:

> (a) Contains, or is based on, false or fraudulent information;
> (b) Contains any statement or representation that is untrue in whole or part; or
> (c) Omits information that could have a material effect on the value, validity or
> authenticity of the claim.

ORS 180.750(2).

79.    The OFCA does not require specific intent. ORS 180.755(3). For the purposes of

the OFCA, "a person has knowledge that a claim, record, statement, document or information is

false or fraudulent if the person:

> (a) Has actual knowledge of the false or fraudulent nature of the claim, record,
> statement, document or information;

(b) Acts in deliberate ignorance of the false or fraudulent nature of the claim, record, statement, document or information; or

(c) Acts in reckless disregard of the false or fraudulent nature of the claim, record, statement, document or information.

ORS 180.755(2).

80.    The OFCA authorizes the Attorney General to bring a civil action against any person that violates the OFCA to recover actual damages and civil penalties. For violations prior to January 1, 2024, a court may award actual damages plus civil penalties of either $10,000 to $50,000 per false claim or two times actual damages. ORS 180.760.

### E.    Wyoming

81.    The Wyoming Medicaid False Claims Act ("WyMFCA") is analogous to the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. The WyMFCA was enacted to enhance Wyoming's ability to recover Medicaid program losses from fraud and false claims.

82.    Under the WyMFCA, a person may be liable to the State of Wyoming for three times the damages sustained by the State, a civil penalty of between $1,000 and $10,000 for each violation, and the state's costs if he:

(i) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval;

(ii) Knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim;

Wyo. Stat. Ann. § 42-4-303(a)(i),(ii).

83.    The terms "knowing" and "knowingly" include intentional conduct and "means that a person, with respect to information, acts: (A) With actual knowledge of the information; (B) In deliberate ignorance of the truth or falsity of the information; or (C) In reckless disregard of the truth or falsity of the information." Wyo. Stat. Ann. § 42-4-102(a)(xiii).

84.    A statement is "material" under the WyMFCA if it "affects the payment or receipt of money or property." Wyo. Stat. Ann. § 42-4-302(a)(ii).

## Factual Allegations

85.    The Intervening States re-allege and incorporate by reference the allegations made in Paragraphs 41 through 122 of the U.S. Complaint in Intervention.

I.    **Regeneron Submitted False ASP Reports to CMS and Caused the Submission of Materially False Claims to the Maine, Nebraska, Oregon, Ohio, and Wyoming State Medicaid Programs**

A.    **By Knowingly Submitting False ASP Reports to CMS, Regeneron Submitted False Statements Material to False Claims to the State Medicaid Programs of Maine, Nebraska, Ohio, Oregon, and Wyoming**

86.    The Intervening States re-allege and incorporate by reference the allegations made in Paragraphs 123 through 126 of the U.S. Complaint in Intervention.

87.    The Intervening States' Medicaid programs relied on the accuracy of Regeneron's ASP submissions to CMS.

88.    Regeneron's inflated ASP reports thereby caused the reimbursements for Eylea by the Medicaid programs of Maine, Nebraska, Ohio, Oregon, and Wyoming to be materially inflated.

B.    **Regeneron's False ASP Reports Caused the Submission of False Claims to the State Medicaid Programs of Maine, Nebraska, Ohio, Oregon, and Wyoming**

89.    Regeneron's failure to properly report credit card fees as price concessions caused the submission of tens of millions of dollars of false claims to the State Medicaid programs of Maine, Nebraska, Ohio, Oregon, and Wyoming.

90.    At all relevant times, Regeneron knew that its customers submitted claims to Medicaid for Eylea. Regeneron knew that the ASP it reported to CMS for Eylea impacted the reimbursement amounts the Intervening States' Medicaid programs paid for Eylea claims.

### C. Regeneron's Violations Were Material to the Medicaid Payment Decisions of the States of Maine, Nebraska, Ohio, Oregon, and Wyoming

91.    Because the Maine, Nebraska, Ohio, Oregon, and Wyoming States' Medicaid reimbursement rates for Eylea were set based on ASP, Regeneron's falsely inflated ASP reports for Eylea were material to the amount the Medicaid programs paid for each Eylea claim. By inflating Eylea's ASP, Regeneron caused the Intervening States' Medicaid programs to reimburse each Eylea claim at a higher, inflated amount.

## II.    Intervening States' Damages/Civil Remedies

### A.    Maine

92.    Between 02/13/2013 and 08/16/2024, the Maine Medicaid program reimbursed providers over $19 million for over 28,000 claims for Eylea. Maine Medicaid continues to reimburse claims for Eylea through the present.

93.    At all relevant times, Regeneron was aware that its customers submitted claims to Maine Medicaid for Eylea and was aware that the ASP it reported for Eylea impacted the reimbursement amounts Maine Medicaid paid for Eylea claims.

94.    The table below includes representative claims to Maine Medicaid for Eylea from the period during which Regeneron was falsely inflating Eylea's ASP:

| Beneficiary State | Beneficiary Initials | Date of Service | Procedure Code | Medicaid Billed Amount | Medicaid Paid Amount |
|---|---|---|---|---|---|
| ME | A.P. | 01/04/2013 | J0178 | $3,700.00 | $392.20 |
| ME | R.H. | 01/08/2014 | J0178 | $5,550.00 | $1,059.82 |
| ME | L.M. | 01/06/2015 | J0178 | $1,961.00 | $392.20 |
| ME | G.C. | 01/05/2016 | J0178 | $2,800.00 | $392.20 |
| ME | I.Y. | 01/12/2017 | J0178 | $2,500.00 | $1,960.76 |
| ME | R.T. | 01/09/2018 | J0178 | $1,943.90 | $388.78 |
| ME | J.B. | 01/02/2019 | J0178 | $3,700.00 | $281.79 |
| ME | H.A. | 01/02/2020 | J0178 | $2,650.00 | $378.01 |

| ME | L.A. | 01/04/2021 | J0178 | $2,784.00 | $531.10 |
| ME | E.G. | 01/03/2022 | J0178 | $2,150.00 | $1,831.50 |
| ME | N.R. | 01/03/2023 | J0178 | $2,150.00 | $424.52 |
| ME | D.M. | 01/02/2024 | J0178 | $3,502.00 | $530.70 |

### B.    Nebraska

95.    Between January 1, 2014 and June 30, 2024, the Nebraska Medicaid program reimbursed providers over $2.1 million for over 10,014 claims for Eylea. Nebraska Medicaid continues to reimburse claims for Eylea through the present.

96.    At all relevant times, Regeneron knew that its customers submitted claims to Nebraska Medicaid for Eylea. Regeneron knew that the ASP it reported for Eylea impacted the reimbursement amounts Nebraska Medicaid paid for Eylea claims.

97.    The table below includes representative claims to Nebraska Medicaid for Eylea from the period during which Regeneron was falsely inflating Eylea's ASP.

| Beneficiary State | Beneficiary Initials | Date of Service | Procedure Code | Medicaid Billed Amount | Medicaid Paid Amount |
| --- | --- | --- | --- | --- | --- |
| NE | R.P. | 2/12/2014 | J0178 | $392.20 | $392.20 |
| NE | P.N. | 9/25/2015 | J0178 | $392.20 | $392.20 |
| NE | M.G. | 2/25/2016 | J0178 | $2,564.00 | $1,961.00 |
| NE | S.M. | 8/18/2017 | J0178 | $391.24 | $391.24 |
| NE | K.D. | 4/6/2018 | J0178 | $2,500.00 | $1,943.88 |
| NE | R.F. | 9/24/2019 | J0178 | $9,250.00 | $1,850.00 |
| NE | K.R. | 11/13/2020 | J0178 | $2,460.00 | $1,856.48 |
| NE | C.S. | 7/7/2021 | J0178 | $2,420.00 | $980.50 |
| NE | H.C. | 3/21/2022 | J0178 | $2,500.00 | $366.30 |
| NE | K.W. | 12/5/2023 | J0178 | $4,800.00 | $3,472.96 |
| NE | R.S. | 6/26/2024 | J0178 | $1,900.00 | $1,682.24 |

98.    At all relevant times, Regeneron knew that its customers submitted claims to Nebraska Medicaid for Eylea. Regeneron knew that the ASP it reported for Eylea impacted the reimbursement amounts Nebraska Medicaid paid for Eylea claims.

### C.    Ohio

99.    Between January 1, 2014 and July 31, 2024, the Ohio Medicaid program reimbursed providers over $53 million for over 44,900 claims for Eylea. Ohio Medicaid continues to reimburse claims for Eylea through the present.

100.    At all relevant times, Regeneron knew that its customers submitted claims to Ohio Medicaid for Eylea. Regeneron knew that the ASP it reported for Eylea impacted the reimbursement amounts Ohio Medicaid paid for Eylea claims.

101.    The table below includes representative claims to Ohio Medicaid for Eylea from the period during which Regeneron was falsely inflating Eylea's ASP.

| Beneficiary State | Beneficiary Initials | Date of Service | Procedure Code | Medicaid Billed Amount | Medicaid Paid Amount |
|---|---|---|---|---|---|
| OH | L.R. | 11/7/2014 | J0178 | $2,400.00 | $392.20 |
| OH | M.R. | 4/28/2015 | J0178 | $2,750.00 | $392.20 |
| OH | L.E. | 9/28/2016 | J0178 | $2,500.00 | $392.20 |
| OH | S.B. | 3/4/2017 | J0178 | $3,700.00 | $392.18 |
| OH | R.G. | 1/25/2018 | J0178 | $2,910.00 | $389.84 |
| OH | S.C. | 7/2/2019 | J0178 | $3,700.00 | $382.95 |
| OH | S.B. | 10/15/2020 | J0178 | $3,780.00 | $371.30 |
| OH | A.W. | 1/14/2021 | J0178 | $7,560.24 | $371.30 |
| OH | C.S. | 5/20/2022 | J0178 | $2,400.00 | $365.68 |
| OH | R.E. | 2/9/2023 | J0178 | $15,120.00 | $262.31 |
| OH | T.L. | 2/15/2024 | J0178 | $7,560.00 | $344.91 |

### D. Oregon

102.    Between January 1, 2014 and July 31, 2024, the Oregon Medicaid program reimbursed providers over $44 million for over 40,000 claims for Eylea. The Oregon Medicaid program continues to reimburse claims for Eylea through the present.

103.    At all relevant times, Regeneron knew that its customers submitted claims to the Oregon Medicaid program for Eylea. Regeneron knew that the ASP it reported for Eylea impacted the reimbursement amounts the Oregon Medicaid program paid for Eylea claims.

104.    The table below includes representative claims to the Oregon Medicaid program for Eylea from the period during which Regeneron was falsely inflating Eylea's ASP.

| Beneficiary State | Beneficiary Initials | Date of Service | Procedure Code | Medicaid Billed Amount | Medicaid Paid Amount |
|---|---|---|---|---|---|
| OR | F. M. | 11/4/2014 | J0178 | $1,850.00 | $1,850.00 |
| OR | J. T. | 9/23/2015 | J0178 | $2,100.00 | $1,961.00 |
| OR | J. P. | 8/25/2016 | J0178 | $2,942.00 | $2,157.10 |
| OR | R. B. | 9/28/2017 | J0178 | $2,942.00 | $1,956.20 |
| OR | D. D. | 10/23/2018 | J0178 | $1,962.00 | $1,935.30 |
| OR | C. C. | 9/26/2019 | J0178 | $2,690.00 | $1,920.40 |
| OR | S. K. | 7/21/2020 | J0178 | $3,100.00 | $1,863.50 |
| OR | J. W. | 3/19/2021 | J0178 | $3,400.00 | $1,843.50 |
| OR | F. A. | 2/21/2022 | J0178 | $3,400.00 | $1,843.50 |
| OR | T. B. | 7/7/2023 | J0178 | $7,188.00 | $6,136.00 |
| OR | N. B. | 3/20/2024 | J0178 | $7,560.00 | $3,029.00 |

### E. Wyoming

105.    Between January 1, 2018, and August 31, 2024, the Wyoming Medicaid program reimbursed providers over $974,000 for over 1,400 fee-for-service claims for Eylea. Wyoming Medicaid continues to reimburse claims for Eylea through the present.

106.    At all relevant times, Regeneron knew that its customers submitted claims to Wyoming Medicaid for Eylea. Regeneron knew that the ASP it reported for Eylea impacted the reimbursement amounts Wyoming paid for Eylea claims.

107.    The table below includes representative claims submitted to and paid by Wyoming Medicaid for Eylea from the period during which Regeneron was falsely inflating Eylea's ASP.

| Beneficiary State | Beneficiary Initials | Date of Service | Procedure Code | Medicaid Billed Amount | Medicaid Allowed Amount | Medicaid Paid Amount |
|---|---|---|---|---|---|---|
| WY | AB | 8/17/2019 | J0178CV | $4,790.00 | $3,921.52 | $3,921.52 |
| WY | MT | 12/20/2019 | J0178 | $3,921.52 | $5,000.00 | $3,921.52 |
| WY | VM | 1/24/2020 | J0178 | $4,788.00 | $ 756.02 | $756.02 |
| WY | FA | 04/06/2021 | J0178 | $5,000.00 | $3,823.48 | $3,823.48 |
| WY | AS | 09/19/2022 | J0178 | $2,600.58 | $1,825.78 | $1,825.78 |
| WY | EG | 04/17/2023 | J0178 | $5,380.00 | $3,574.20 | $714.84 |
| WY | SD | 12/7/2023 | J0178 | $1,736.48 | $2,568.00 | $1,736.48 |
| WY | CV | 03/04/2024 | J0178 | $2,600.58 | $1,724.56 | $1,724.56 |

## **CAUSES OF ACTION**

## **CLAIMS OF THE STATE OF MAINE**

## **State of Maine Count I**

## **False Claim: Presenting or Causing False or Fraudulent Claim (22 M.R.S. § 15)**

108.    The allegations of the preceding paragraphs are realleged as if fully set forth herein.

109.    Regeneron knowingly made or presented or caused to be presented for payment or approval claims upon the Maine Medicaid program knowing such claims to be materially false, fictitious or fraudulent in violation of 22 M.R.S. § 15 by its knowing misreporting of the ASP for Eylea, causing the Maine Medicaid program to pay inflated reimbursement amounts for the drug.

110.    Maine, by and through its Medicaid program, and unaware of Regeneron's conduct, paid the Eylea claims submitted by healthcare providers.

111.    By virtue of Regeneron's said conduct, Maine has suffered actual damages and is entitled to recover actual damages in the form of restitution, plus interest thereon, as well as payment of civil penalties of either three times the actual damages or $2,000 for each thusly-false claim (whichever is the greater amount), plus actual costs of suit, costs of investigation, and attorney's fees.

### State of Maine Count II

### False Claim: False Statement in Connection with a Claim
### (22 M.R.S. § 15)

112.    The allegations of the preceding paragraphs are realleged as if fully set forth herein.

113.    Regeneron knowingly made false statements or knowingly submitted false documents material to a false, fictitious or fraudulent claim in violation of 22 M.R.S. § 15 by its knowing misreporting of the ASP for Eylea, causing the Maine Medicaid program to pay inflated reimbursement amounts for the drug.

114.    Maine, by and through its Medicaid program, and unaware of Regeneron's conduct, paid the Eylea claims submitted by healthcare providers.

115.    By virtue of Regeneron's said conduct, Maine has suffered actual damages and is entitled to recover actual damages in the form of restitution, plus interest thereon, as well as payment of civil penalties of either three times the actual damages or $2,000 for each thusly false claim (whichever is the greater amount), plus actual costs of suit, costs of investigation, and attorney's fees.

/ / /

/ / /

### State of Maine Count III

### Unjust Enrichment

116.    The allegations of the preceding paragraphs are realleged as if fully set forth herein.

117.    By submitting fraudulently inflated ASP reports to CMS for Eylea, Regeneron received and retained profits for Eylea from Maine Medicaid in excess of those that it would have received if it had accurately reported the ASP for Eylea to CMS.

118.    Maine Medicaid reimbursed MaineCare for Eylea in reasonable reliance on the misrepresentations made by Regeneron its ASP reports to CMS, thereby conferring a benefit on Regeneron.

119.    Regeneron knew and appreciated it received this benefit.

120.    Under the circumstances, it would be inequitable for Regeneron to retain the value conferred by the State of Maine in reliance on its inflated ASP reports.

121.    By receiving, retaining, and appropriating Maine Medicaid funds, which it was not entitled to by law or equity, Regeneron was unjustly enriched at Maine's expense in an amount to be determined at trial, which good conscience demands should be set over to Maine by Regeneron.

### CLAIMS OF THE STATE OF NEBRASKA

### Count I

### False Medicaid Claims Act, Neb. Rev. Stat. § 68-936(1)(a)

122.    Plaintiff re-alleges and incorporates by reference all prior paragraphs above as if fully set forth herein.

123.    By virtue of the acts described herein, Defendant Regeneron violated Neb. Rev. Stat. § 68-936(1)(a) by knowingly presenting or causing to be presented false or fraudulent claims to Medicaid for payment or approval from at least January 1, 2014 to June 30, 2024. Defendant's

knowing misreporting of the ASP for Eylea caused Nebraska Medicaid to pay inflated reimbursement amounts for each Eylea claim.

124.    The State of Nebraska, unaware of the foregoing facts and circumstances causing said claims to be false or fraudulent, paid said claims.

125.    If the State of Nebraska had known of said misconduct, it never would have paid the inflated reimbursement amounts for said claims.

126.    Defendant knew, or was deliberately ignorant, or acted in reckless disregard in not knowing, that these claims were false.

127.    As a result of Defendant's violations of § 68-936(1)(a), the State of Nebraska sustained damages in an amount to be determined at trial.  Nebraska's damages continue to accrue to the present day.  Nebraska is entitled to recover treble damages plus a civil monetary penalty of $10,000 for each of the over 10,014 false claims submitted, together with reasonable attorney fees and costs.

## Count II

## Fraudulent Misrepresentation

128.    Plaintiff re-alleges and incorporates by reference all prior paragraphs above as if fully set forth herein.

129.    As described in Count I above, Defendant falsely represented to CMS and therefore Nebraska the ASP for Eylea, causing Nebraska Medicaid to pay inflated reimbursement amounts for each Eylea claim that it otherwise would not have paid. This resulted in damages to Nebraska Medicaid.

130.    Nebraska justifiably relied on Defendant's representations that the claims they submitted or caused to be submitted were accurate and in accordance with statutes and Medicaid's regulations, policies, and procedures.

131.    Nebraska's reliance was justified because Defendant impliedly certified that the reported ASP was true, accurate, and correct in submitting or causing the submission of its inflated ASP reports to CMS.

132.    The State was damaged, and continues to be damaged, in an amount to be determined at trial, as a result of the Defendant's fraudulent misrepresentations regarding the above-described claims.

## Count III

## Unjust Enrichment

133.    Plaintiff re-alleges and incorporates by reference all prior paragraphs above as if fully set forth herein.

134.    By reporting inflated ASP numbers to CMS for Eylea, Defendant was able to receive and retain profits for Eylea from Nebraska Medicaid in excess of those it would have received if it had accurately reported the ASP for Eylea to CMS.

135.    The State of Nebraska, through Nebraska Medicaid, paid the claims submitted by Nebraska Medicaid providers in reasonable reliance on the misrepresentations made by Regeneron in its ASP reports to CMS for Eylea, thereby conferring a benefit on Regeneron.

136.    Regeneron knew and appreciated that it received this benefit.

137.    By retaining the use and enjoyment of Nebraska Medicaid funds that it was not entitled to receive or retain by law or equity, Defendant has been unjustly enriched at Nebraska's

expense in an amount to be determined at trial, and continues to be unjustly enriched to the present day.

138.    Under the circumstances, in equity and good conscience, and as dictated by the needs of justice and fairness, the amount to be determined at trial, by which Regeneron was unjustly enriched at Nebraska's expense should be returned to Nebraska, as it would be unconscionable for Regeneron to retain those monies.

## CLAIMS OF THE STATE OF OHIO

### Count I

### Common Law Fraud

139.    The State of Ohio realleges and incorporates by reference all prior paragraphs above as if fully set forth herein.

140.    By virtue of the acts described above, Regeneron made false representations or concealment of facts, with knowledge of its falsity, or with such reckless disregard or deliberate ignorance as to whether it is true or false that knowledge may be inferred, in its submission of false and fraudulent inflated ASP reports to CMS.

141.    Defendant made these representations with the intent of misleading the Ohio Medicaid program into relying upon fraudulent inflated ASP reports to CMS as true and accurate.

142.    The fraudulent ASP reports were material to, and Ohio Medicaid justifiably relied on their accuracy and truthfulness in, determining Ohio Medicaid reimbursement for claims for Eylea.

143.    Regeneron caused the State of Ohio, through the Ohio Medicaid program, to pay inflated reimbursement amounts for Eylea claims submitted by healthcare providers, which the

Ohio Medicaid program would not have paid had Regeneron not submitted false or fraudulent ASP reports to CMS.

144.    By reason of the foregoing, the State suffered, and continues to suffer, actual damages in an amount to be determined at trial.

145.    Wherefore, the State of Ohio requests that the Court enter judgement against Defendant granting the State of Ohio relief in excess of $25,000, in an amount to be determined at trial, interest, punitive damages, plus reasonable attorney fees and costs of the suit, and such other and further relief as the Court deems just and appropriate.

## Count II

## Unjust Enrichment

146.    The State of Ohio realleges and incorporates by reference all prior paragraphs above as if fully set forth herein.

147.    By reporting inflated ASP figures to CMS for Eylea, Regeneron was able to retain profits for Eylea and avoid paying monies owed to the State of Ohio.

148.    The State of Ohio, through the Ohio Medicaid program, paid the claims submitted by Ohio Medicaid healthcare providers in reasonable reliance on the misrepresentations made by Regeneron its ASP reports to CMS for Eylea, thereby conferring a benefit on Regeneron.

149.    Regeneron knew and appreciated it received this benefit.

150.    By retaining the use and enjoyment of the monies that should have been paid to State of Ohio, Regeneron has been unjustly enriched at Ohio's expense in excess of $25,000, in an amount to be determined at trial, which, under the circumstances, in equity and good conscience, and as dictated by the needs of justice and fairness, should be returned to the State of Ohio or would be unconscionable for Regeneron to retain.

## Count III

### Negligent Misrepresentation

151.    The State of Ohio realleges and incorporates by reference all prior paragraphs above as if fully set forth herein.

152.    By virtue of the acts described above, Regeneron, in the course of its business, submitted false representations, with knowledge of its falsity, or with such reckless disregard or deliberate ignorance of the falsity, in its inflated ASP reports to CMS for Eylea.

153.    Regeneron's misrepresentations regarding its inflated ASP for Eylea in its reports to CMS were material.

154.    The State of Ohio, through the Ohio Medicaid program, paid the claims submitted by Ohio Medicaid healthcare providers in reasonable reliance on the misrepresentations made by Regeneron as to its inflated ASP figures to CMS for Eylea, thereby incurring damages.

155.    Wherefore, the State of Ohio requests that the Court enter judgement against Defendant granting the State of Ohio relief in excess of $25,000, in an amount to be determined at trial, and such other and further relief as the Court deems just and appropriate.

### CLAIMS OF THE STATE OF OREGON

### Count I

### Oregon False Claims Act: Presenting or Causing False or Fraudulent Claim (ORS 190.755(1)(a))

156.    Oregon realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

157.    Regeneron knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to the Oregon Medicaid program in violation of the Oregon False

Claims Act, ORS 180.750 *et seq.* Regeneron's knowing misreporting of the ASP for Eylea caused the Oregon Medicaid program to pay inflated reimbursement amounts for each Eylea claim.

158.    Regeneron presented, or caused to be presented, false or fraudulent claims with actual knowledge of their falsity, or with deliberate indifference as to their truth or falsity, or with reckless disregard of their truth or falsity.

159.    Oregon, by and through the Oregon Medicaid program, and unaware of Regeneron's conduct, paid the Eylea claims submitted by healthcare providers.

160.    By virtue of Regeneron's conduct, Oregon has suffered actual damages and is entitled to recover actual damages plus a civil monetary penalty of either two times the actual damages or $10,000 to $50,000 for each unlawful claim, together with reasonable attorney fees and costs.

## Count II

## Oregon False Claims Act: False Statement in Connection with a Claim (ORS 190.755(1)(b))

161.    Oregon realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

162.    Regeneron knowingly made or used, or caused to be made or used, a record or statement that the person knows to contain, or to be based on, false or fraudulent information submitted in the course of presenting a claim for payment or approval to the Oregon Medicaid program. Regeneron knowingly created and submitted false and fraudulent ASP reports to CMS that it knew would cause providers use this false statement in the submission of their Eylea claims to the Oregon Medicaid program.

163.    The fraudulent ASP reports were material, and the Oregon Medicaid program actually relied on them, in determining the Oregon Medicaid reimbursement for Eylea claims that was used by providers in the course of submitting Eylea claims.

164.    Regeneron made or used, or cause to made or used, false or fraudulent statements or information with actual knowledge of their falsity, or with deliberate ignorance as to their truth or falsity, or with reckless disregard of their truth or falsity.

165.    By virtue of Regeneron's conduct, Oregon has suffered actual damages and is entitled to recover actual damages plus a civil monetary of either two times the actual damages or $10,000 to $50,000 for each unlawful claim, together with reasonable attorney fees and costs.

## Count III
## Unjust Enrichment

166.    Oregon realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

167.    By submitting fraudulently inflated ASP reports to CMS for Eylea, Regeneron was able to receive and retain profits for Eylea from the Oregon Medicaid program in excess of those that it would have received if it had accurately reported the ASP for Eylea to CMS.

168.    The Oregon Medicaid program set the reimbursement rate for Eylea, and paid the claims submitted by Oregon Medicaid providers for Eylea, in reasonable reliance on the misrepresentations made by Regeneron its ASP reports to CMS, thereby conferring a benefit on Regeneron.

169.    Regeneron knew and appreciated it received this benefit.

170.    By retaining the use and enjoyment of Oregon Medicaid funds which it was not entitled to receive or retain by law or equity, Regeneron has been unjustly enriched at Oregon's expense in an amount to be determined at trial, which, under the circumstances, in equity and good

conscience, and as dictated by the needs of justice and fairness, should be returned to Oregon and would be unconscionable for Regeneron to retain.

## CLAIMS OF THE STATE OF WYOMING

### Count I
### Wyoming Medicaid False Claims Act: False Statements Material to False Claims
### Wyo. Stat. Ann. § 43-4-303(a)(i).

171.    Wyoming realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

172.    By virtue of the acts described above, Regeneron violated the Wyoming Medicaid False Claims Act and knowingly presenting, or caused to be presented, false or fraudulent claims for payment or approval to Wyoming Medicaid in violation of Wyo. Stat. Ann. § 43-4-303(a)(i).

173.    The State of Wyoming, Wyoming Medicaid program, was unaware of Regeneron's conduct, and paid these claims for Eylea, which were submitted by healthcare providers.

174.    Wyoming Medicaid's payment of these false and fraudulent claims was the reasonable and foreseeable result of Regeneron's conduct.

175.    By reason of the foregoing, the State of Wyoming sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty of $1,000 to $10,000 for each false or fraudulent claim. Regeneron is also liable to the State of Wyoming for the costs of this action.

### Count II
### Wyoming Medicaid False Claims Act: False Statements Material to False Claims
### Wyo. Stat. Ann. § 43-4-303(a)(ii).

176.    Wyoming realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

177.    Regeneron knowingly made, or used, or caused to be made or used, false records or statements that were material to their false or fraudulent claims for payment to the Wyoming

Medicaid program in violation of Wyo. Stat. Ann. § 43-4-303(a)(ii); that is, Regeneron knowingly created and submitted false and fraudulently inflated ASP reports to CMS.

178.    Regeneron made or used, or cause to made or used, false or fraudulent statements or information with actual knowledge of their falsity, or with deliberate ignorance as to their truth or falsity, or with reckless disregard of their truth or falsity.

179.    The fraudulent ASP reports were material, and the Wyoming Medicaid program actually relied on them, in determining the Wyoming Medicaid reimbursement for Eylea claims that was used by providers in the course of submitting Eylea claims.

180.    By reason of the foregoing, the State of Wyoming sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty of $1,000 to $10,000 for each false or fraudulent claim. Regeneron is also liable to the State of Wyoming for the costs of this action.

### Count III
### Unjust Enrichment

181.     Wyoming realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

182.    By submitting fraudulently inflated ASP reports to CMS for Eylea, Regeneron received and retained profits for Eylea from Wyoming Medicaid in excess of those that it would have received if it had accurately reported the ASP for Eylea to CMS.

183.    Wyoming Medicaid reimbursed Wyoming providers for Eylea in reasonable reliance on the misrepresentations made by Regeneron its ASP reports to CMS, thereby conferring a benefit on Regeneron.

184.    Regeneron knew and appreciated it received this benefit.

185.    By receiving, retaining, and appropriating Wyoming Medicaid funds, which it was not entitled to by law or equity, Regeneron was unjustly enriched at Wyoming's expense in an amount to be determined at trial, which, good conscience' demands should be set over to Wyoming by Regeneron.

## **Prayer for Relief**

WHEREFORE, the undersigned Intervening States respectfully request this Court to enter judgment for Intervening States and against Defendant Regeneron on each count of this Complaint, impose damages and penalties as described above and to the full extent allowed by law and in equity and award all costs and fees as applicable under state law.

## **Demand for Jury Trial**

The Intervening States demand a jury trial on all claims alleged herein.

Dated:  June 18, 2025

Respectfully submitted,

**THE STATE OF MAINE**

AARON FREY
Attorney General

*/s/ John P. Burke*
John P. Burke, Jr. (admitted pro hac vice)
Maine State Bar No. 008425
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333-0006
Phone: (207) 626-8896
Fax: (207) 287-3120
john.burke@maine.gov

**THE STATE OF NEBRASKA**

MICHAEL T. HILGERS
Attorney General

*/s/ D. Mark Collins*
D. Mark Collins (admitted *pro hac vice*)
Nebraska State Bar No. 22835
Katherine O'Brien (admitted *pro hac vice*)
Nebraska State Bar No. 25993
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509-8920
Tel: (402) 471-2683
Fax: (402) 471-4725
mark.collins@nebraska.gov
katherine.obrien@nebraska.gov

**THE STATE OF OHIO**

DAVE YOST
Attorney General

*/s/ Susan R. Schultz*
Susan R. Schultz (admitted *pro hac vice*)
Ohio State Bar No. 0082537
Sean R. Mackin (admitted *pro hac vice*)
Ohio State Bar No. 103144
Assistant Attorneys General
Office of the Ohio Attorney General
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
Tel: (614) 466-0722
Fax: (877) 816-0526
Susan.Schultz@OhioAGO.gov
Sean.Mackin@OhioAGO.gov

**THE STATE OF OREGON**

DAN RAYFIELD
Attorney General

*/s/ John C. Rothermich*
John C. Rothermich (admitted *pro hac vice*)
Oregon State Bar No.071685
Senior Assistant Attorney General
Oregon Department of Justice – Medicaid Fraud Unit
100 SW Market St.
Portland, Oregon 97201
Tel: (971) 673-1880
Fax: (971) 673-1890
John.C.Rothermich@doj.oregon.gov


**THE STATE OF WYOMING**

RYAN SCHELHAAS
Interim Attorney General

*/s/ Travis J. Kirchhefer*
Travis J. Kirchhefer, (admitted pro hoc vice)
Wyoming State Bar No. 6-4279
Sr. Assistant Attorney General
Medicaid Fraud Control Unit
Office of the Wyoming Attorney General
109 State Capitol, Cheyenne, WY 82002
Phone: (307) 777-3444
Fax: (307) 777-5094
travis.kirchhefer@wyo.gov