# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel.* JULIANNE NUNNELLY and MATTHEW SHANKS<br><br>    Plaintiffs,<br><br>v.<br><br>REGENERON PHARMACEUTICALS, INC.,<br><br>    Defendant. | 1:20-cv-11401-PBS |

### REGENERON PHARMACEUTICALS, INC.'S AMENDED ANSWER TO THE UNITED STATES' COMPLAINT IN INTERVENTION

Defendant Regeneron Pharmaceuticals, Inc. ("Regeneron") hereby responds to the United States' Complaint as follows.

### Introduction

1.    Denied.  Although Regeneron acknowledges that the United States brought this action, Regeneron denies that it violated any laws.

2.    Denied.

3.    Admitted in part; denied in part.  It is admitted that EYLEA is an outpatient, physician-administered injectable drug that treats neovascular (wet) age-related macular degeneration ("AMD") and that Wet AMD is prevalent progressive retina degenerative macular disease that leads to gradual vision impairment and mainly affects the elderly.  Regeneron is without knowledge or information sufficient to form a belief as to the truth of the exact amount paid by Medicare for EYLEA and therefore such allegations are denied.  The remaining allegations in Paragraph 3 are denied.

1

4.     Admitted in part; denied in part.  It is admitted that EYLEA customers or retina practices typically purchase EYLEA from third-party distributors.  It is admitted that Regeneron entered into distribution contracts with Besse Medical ("Besse"), McKesson Corporation ("McKesson"), and CuraScript SD Specialty Distribution ("CuraScript"), and later also contracted with Metro Medical, a division of Cardinal Health.  It is admitted that Regeneron has sold to specialty pharmacies, including Avella of Deer Valley.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.  The remaining allegations in Paragraph 4 are denied.

5.     Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.  To the extent this paragraph contains conclusions of law, no response is required.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 5 are denied.

6.     Denied.  The invoices referenced speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 6 are denied.

7.     Denied.

8.     Admitted in part; denied in part.  It is admitted that when distributors paid credit card processing fees charged by issuing banks, Regeneron reimbursed its distributors for actual credit card processing fees paid.  It is admitted that Regeneron generally received monthly credit card processing fee invoices and supporting spreadsheet details from distributors.  The remaining allegations in Paragraph 8 are denied.

9.      Denied.

10.     Denied.

11.     Admitted in part; denied in part.  It is admitted that Regeneron submitted quarterly ASP reports for EYLEA to the Centers for Medicare and Medicaid Services (CMS).   The remaining allegations in Paragraph 11 are denied.

12.     Admitted in part; denied in part.  It is admitted that Regeneron internally discussed whether credit card processing fees paid by distributors and charged by issuing banks could qualify as bona fide service fees.

13.     Denied.

14.     Denied.

15.     Denied.

## Jurisdiction And Venue

16.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations are denied.

## Parties

17.     Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.  To the extent this paragraph contains conclusions of law, no response is required.  To the extent a response is required, the allegations are denied.

18.     Admitted.

19.     Admitted.

**Background**

20.    Denied. The sections of the United States Code speak for themselves, and therefore all characterizations of them are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

21.    Denied. The section of the United States Code speaks for itself, and therefore all characterizations of it are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

22.    Denied. The sections of the United States Code and the United States Code of Federal Regulations speak for themselves, and therefore all characterizations of them are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

23.    Denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

24.    Denied. The section of the United States Code speaks for itself, and therefore all characterizations of it are denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

25.    Denied. The section of the United States Code of Federal Regulations, the OIG report, and CMS manual speak for themselves, and therefore all characterizations of them are denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.

To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

26.     Denied as a conclusion of law to which no response is required. To the extent a response is required, the allegations are denied. Further, the section of the United States Code cited speaks for itself, and therefore all characterizations of it are denied.

27.     Denied as a conclusion of law to which no response is required. To the extent a response is required, the allegations are denied. Further, the section of the United States Code cited speaks for itself, and therefore all characterizations of it are denied.

28.     Denied as a conclusion of law to which no response is required. To the extent a response is required, the allegations are denied. Further, the section of the United States Code of Federal Regulations speaks for itself, and therefore all characterizations of it are denied.

29.     Denied as a conclusion of law to which no response is required. To the extent a response is required, the allegations are denied. Further, the section of the United States Code of Federal Regulations speaks for itself, and therefore all characterizations of it are denied.

30.     Denied. The section of the United States Code of Federal Regulations, the Congressional report, and the United States Department Health and Human Services (HHS) brief speak for themselves, and therefore all characterizations of them are denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

31.     Denied. The Congressional Committee Hearing Statement speaks for itself, and therefore all characterizations of it are denied. Regeneron is without information sufficient to form

a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

32.    Denied. The report and Congressional Committee Hearing Statement speak for themselves, and therefore all characterizations of them are denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

33.    Denied. The referenced opinion speaks for itself, and therefore all characterizations of it are denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

34.    Denied. The sections of the referenced Act and United States Code speak for themselves, and therefore all characterizations of them are denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required. To the extent a response is required, the allegations are denied.

35.    Denied. The sections of the United States Code of Federal Regulations and Federal Register speak for themselves, and therefore all characterizations of them are denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations

concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required.  To the extent a response is required, the allegations are denied.

36.     Denied.  The sections of the United States Code of Federal Regulations and Federal Register speak for themselves, and therefore all characterizations of them are denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent this paragraph contains conclusions of law, no response is required.  To the extent a response is required, the allegations are denied.

37.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations are denied.  Further, the section of the United States Code cited speaks for itself, and therefore all characterizations of it are denied.

38.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations are denied.  Further, the section of the United States Code cited speaks for itself, and therefore all characterizations of it are denied.

39.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations are denied.  Further, the section of the United States Code cited speaks for itself, and therefore all characterizations of it are denied.

40.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations are denied.  Further, the section of the United States Code cited speaks for itself, and therefore all characterizations of it are denied.

### Factual Allegations

41.     Admitted.

42.    Admitted in part; denied in part.  It is admitted that Regeneron announced the commercial launch of EYLEA on November 21, 2011 after the FDA approved EYLEA as an anti-VEGF inhibitor for the treatment of Wet AMD on November 18, 2011.  It is admitted that Lucentis is manufactured by Genentech and is a competitor drug to EYLEA.  For the remaining allegations in Paragraph 42, Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.

43.    Denied.   The referenced studies speak for themselves, and therefore all characterizations of them are denied.  Moreover, Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 43 are denied.

44.    Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 44 are denied.

45.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 45 are denied.

46.    Admitted in part; denied in part.  It is admitted that Regeneron contracted with certain distributors and sold EYLEA to those distributors at its wholesale acquisition cost ("WAC").  The documents cited speak for themselves, and therefore all characterizations of them

are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 46 are denied.

47.    Admitted in part; denied in part.  It is admitted that distributors sold EYLEA to retina practices.  The documents cited speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 47 are denied.

48.    Denied.    The documents cited speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 48 are denied.

49.    Admitted in part; denied in part.  It is admitted that when distributors paid credit card processing fees charged by issuing banks, Regeneron reimbursed its distributors for actual credit card processing fees paid.  Further, the document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 49 are denied.

50.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 50 are denied.

51.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 51 are denied.

52.    Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations

are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 52 are denied.

53.    Denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. Further, the referenced study speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 53 are denied.

54.    Denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. Moreover, the document cited speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 54 are denied.

55.    Denied. The document cited speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 55 are denied.

56.    Denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 56 are denied.

57.    Denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 57 are denied.

58.     Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 58 are denied.

59.     Denied.

60.     Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 60 are denied.

61.     Denied.  The documents cited speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 61 are denied.

62.     Admitted in part; denied in part.  It is admitted that Regeneron generally received monthly credit card processing fee invoices and supporting spreadsheet details from distributors.  Moreover, the document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 62 are denied.

63.     Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 63 are denied.

64.     Admitted in part; denied in part.  It is admitted that when distributors paid credit card processing fees charged by issuing banks, Regeneron generally received monthly credit card processing fee invoices and supporting spreadsheet details from distributors.  Moreover, the document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent

a response is required, the allegations are denied.  The remaining allegations in Paragraph 64 are denied.

65.     Denied.   The documents cited speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 65 are denied.

66.     Admitted in part; denied in part.  It is admitted that when distributors paid credit card processing fees charged by issuing banks, Regeneron generally received monthly credit card processing fee invoices.   The documents cited speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 66 are denied.

67.     Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 67 are denied.

68.     Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 68 are denied.

69.     Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 69 are denied.

70.     Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 70 are denied.

71.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 71 are denied.

72.    Admitted in part; denied in part.  It is admitted that when distributors paid credit card processing fees charged by issuing banks, Regeneron reimbursed its distributors for actual credit card processing fees paid.  The referenced documents speak for themselves, and therefore all characterizations of them are denied.  To the extent any further response is required, the allegations are denied.  The remaining allegations in Paragraph 72 are denied.

73.    Denied.

74.    Denied

75.    Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 75 are denied.

76.    Denied.  The referenced documents speak for themselves, and all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations of Paragraph 76 are denied.

77.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations of Paragraph 77 are denied.

78.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations of Paragraph 78 are denied.

79. Denied. The document cited speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 79 are denied.

80. Denied. The document cited speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 80 are denied.

81. Denied. The document cited speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 81 are denied.

82. Denied. The document cited speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 82 are denied.

83. Denied. The document cited speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 83 are denied.

84. Denied. Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied. Further, the document cited speaks for itself, and therefore all characterizations of it are denied. To the extent any response is required, the allegations are denied. The remaining allegations in Paragraph 84 are denied.

85. Denied. The document cited speaks for itself, and therefore all characterizations of it are denied. To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 85 are denied.

86.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 86 are denied.

87.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 87 are denied.

88.    Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.  Further, the referenced document speaks for itself, and all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 88 are denied.

89.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 89 are denied.

90.    Denied.

91.    Denied.

92.    Denied.  The referenced document speaks for itself, and all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 92 are denied.

93.    Denied.

94.    Admitted in part; denied in part.  It is admitted that Regeneron paid distributors a service fee for various services.  It is further admitted Regeneron reimbursed distributors for any

credit card processing fees charged by issuing banks.  The remaining allegations in Paragraph 94 are denied.

94.      95.      Denied.

96.      Denied.

97.      Denied.

98.      Denied.    The referenced document speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 98 are denied.

99.      Denied.  The section of the United States Code of Federal Regulations speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  Any remaining allegations in Paragraph 99 are denied.

100.     Denied.    The documents cited speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 100 are denied.

101.     Denied.

102.     Denied.    The documents cited speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 102 are denied.

103.     Denied.

104.     Denied.

105.     Denied.

106.     Denied.

107.    Denied.    The documents cited speak for themselves, and therefore all characterizations of them are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 107 are denied.

108.    Denied.    The referenced document speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 108 are denied.

109.    Denied.    The referenced document speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied. The remaining allegations in Paragraph 109 are denied.

110.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 110 are denied.

111.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 111 are denied.

112.    Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 112 are denied.

113.    Denied.

114.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.  To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 114 are denied.

115.    Denied.

116.    Denied.   The referenced documents speak for themselves, and therefore all characterizations of them are denied.   To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 116 are denied.

117.    Denied.   The referenced documents speak for themselves, and therefore all characterizations of them are denied.   To the extent a response is required, the allegations are denied.  The remaining allegations in Paragraph 117 are denied.

118.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.   To the extent a response is required, the allegations are denied.   The remaining allegations of Paragraph 118 are denied.

119.    Denied.

120.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.   To the extent a response is required, the allegations are denied.   The remaining allegations of Paragraph 120 are denied.

121.    Denied.    The documents cited speak for themselves, and therefore all characterizations of them are denied.   To the extent a response is required, the allegations are denied.  The remaining allegations of Paragraph 121 are denied.

122.    Denied.  The document cited speaks for itself, and therefore all characterizations of it are denied.   To the extent a response is required, the allegations are denied.   The remaining allegations of Paragraph 122 are denied.

123.    Admitted.

124.    Admitted in part; denied in part.  It is admitted that Regeneron did not deduct from its ASP reports credit card processing fees reimbursed to distributors from 2012 to 2023.  The remaining allegations in Paragraph 124 are denied.

125.    Denied.

126.    Denied.

127.    Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.  Regeneron is without information sufficient to form a belief as to the truth or falsity of the allegations concerning parties other than Regeneron, and therefore such allegations are denied.

132.    Denied.

## COUNT I

133.    Regeneron incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

134.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 134 are denied.

135.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 135 are denied.

136.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 136 are denied.

## COUNT II

137.    Regeneron incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

138.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 138 are denied.

139.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 139 are denied.

140.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 140 are denied.

141.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 141 are denied.

## COUNT III

142.    Regeneron incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

143.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 143 are denied.

144.    Denied as a conclusion of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 144 are denied.

## **PRAYER FOR RELIEF**

Regeneron denies that the United States is entitled to any relief whatsoever; including the specific relief set forth in Paragraphs 145 through 147 of the Prayer for Relief.

## **AFFIRMATIVE DEFENSES**

Pursuant to Federal Rule of Civil Procedure 8(c) and without assuming the burden of proof for any claim or element of a claim that properly lies with the United States, Regeneron sets forth the following affirmative defenses to the Complaint.

1.     The United States' claims are barred, in whole or in part, because the Complaint fails to state a claim against Regeneron upon which relief may be granted.

2.     The United States' claims are barred because the Complaint does not comply with Rule 9(b) of the Federal Rules of Civil Procedure.

3.     The United States' claims are barred because Regeneron's actions did not violate the False Claims Act.

4.     The United States' claims are barred in whole or in part because Regeneron's treatment of credit card processing fees for ASP reporting purposes complied with all applicable laws and regulations.  To the extent that ASP should have been calculated and/or reported as alleged by the United States, the applicable laws and regulations were ambiguous as to the treatment of credit card processing fees for purposes of calculating and reporting ASP, Regeneron's interpretations of those laws and regulations were reasonable and in good faith, and Regeneron's treatment of credit card processing fees for purposes of calculating and reporting ASP was done in good faith and not with any improper or illegal purpose, intent or knowledge.

5.     The United States' claims are barred, in whole or in part, because Regeneron's actions were based on an objectively reasonable interpretation of the relevant guidelines.  The relevant guidelines were, at best, vague and ambiguous. *See* OEI-12-17-00130, *Reasonable Assumptions in Manufacturer Reporting of AMPs and Best Practices*, U.S. Dep't of Health and Hum. Servs. Off. of Inspector Gen. 9 (Sept. 2019), https://oig.hhs.gov/oei/reports/oei-12-17-

00130.pdf; OEI-BL-21-00330, *Manufacturers May Need Additional Guidance To Ensure Consistent Calculations of Average Sales Price*, U.S. Dep't of Health and Hum. Servs. Off. of Inspector Gen. 9 (Dec. 2022), https://oig.hhs.gov/oei/reports/OEI-BL-21-00330.pdf.

6.    The United States' claims are barred in whole or in part because Regeneron followed CMS guidance to make "reasonable assumptions in its calculations of ASP" "in the absence of specific guidance" from the United States Congress or HHS and CMS. 71 Fed. Reg. 48,982, 49,000 (Aug. 22, 2006); 71 Fed. Reg. at 69,669 (similar); CMS, *CMS Manual System Pub. 100-04: Transmittal No. 1423, Medicare Claims Processing* 6 (Feb. 1, 2008) (similar).

7.    The United States' claims are barred, in whole or in part, because Regeneron's actions were undertaken in good faith and/or in reasonable reliance upon regulatory interpretations and judgments by federal employees or officials upon whom Regeneron was entitled to rely. Further, Regeneron's actions constitute lawful, proper, justified, and/or privileged conduct in accordance with the governing statutes and regulations.

8.    The Complaint fails to state a claim upon which relief can be granted because any alleged regulatory noncompliance alone is not sufficient to state a claim for relief under the False Claims Act.

9.    The United States' claims are barred, in whole or in part, because Regeneron did not present or cause to be presented any false claim, record, or statement to the United States.

10.    The Complaint fails to state a claim upon which relief can be granted because, over the time period alleged in the Complaint, there was no clear, unambiguous, or objective legal standard by which to judge truth or falsity of claims.

11.    The United States' claims are barred, in whole or in part, because Regeneron's actions fall within the guidelines established by HHS and CMS.

12.     The United States' claims are barred, in whole or in part, because Regeneron did not act with the requisite scienter within the meaning of the False Claims Act.

13.     Some or all of the purported claims and allegations in the Complaint are barred in whole or in part because collective scienter does not apply to the causes of action alleged in the Complaint.

14.     The United States' claims are barred, in whole or in part, because representatives from DOJ, HHS and CMS, and individuals with authority to act on behalf of those agencies, knew that manufacturers were reimbursing distributors for credit card processing fees. These individuals further knew that the manufacturers excluded credit card processing fees from ASP calculations. During the time period at issue in the Complaint, Regeneron was aware that the government was aware of Regeneron's treatment of credit card processing fees for ASP reporting purposes.

15.     The United States' claims are barred, in whole or in part, because the United States had actual or constructive knowledge of and/or acquiescence to the relevant facts and, therefore,

16.     The United States' claims are barred, in whole or in part, by the doctrine of consent and/or ratification, including by the failure of the United States to take any action despite knowledge of the alleged conduct.

17.     The United States' claims are barred, in whole or in part, because the alleged conduct of Regeneron was not material to the payment of any alleged false or fraudulent claims.

18.     The United States' claims are barred, in whole or in part, because Regeneron's conduct did not cause or proximately cause any false claim or certification, or the alleged loss and/or damages.

19.     The United States' claims are barred, in whole or in part, as the occurrences referenced in the Complaint and all damages, if any, resulting therefrom were caused by the acts or omissions of third parties over whom Regeneron had no control.

20.     The United States' attempt to impose requirements beyond those identified in the federal regulations violates the Administrative Procedures Act.

21.     The United States has failed to exhaust its administrative remedies.

22.     The United States' claims are barred, in whole or in part because, to the extent penalties and treble damages authorized under the False Claims Act exceed any actual loss incurred by the Government as a result of any claims paid, such an award of civil penalties would violate the excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fifth Amendment to the United States Constitution, and therefore would be void.  The United States' claims would deprive Regeneron of its rights to substantive and procedural due process of law under the United States Constitution.  The applicable statutes and regulations did not provide adequate notice to Regeneron that the conduct about which the United States complains was improper or unlawful.

23.     The United States' claims are barred, in whole or in part, by the applicable statues of limitations, borrowing statutes, and/or statutes of repose.

24.     The United States' claims are barred, in whole or in part, by the doctrine of estoppel.

25.     The United States' claims are barred, in whole or in part, by the doctrine of waiver and/or its authorized agent's review, approval and audit of claims.

26.     The United States' claims are barred, in whole or in part, by the doctrines of laches and/or undue delay.

27.     The United States' claims are barred, in whole or in part, by the doctrine of unclean hands.

28.     The United States' claims are barred, in whole or in part, because the United States would be unjustly enriched if allowed to recover the damages and/or penalties alleged in the Amended Complaint.

29.     The United States' Third Cause of Action (Unjust Enrichment) is barred because there is adequate remedy at law.

30.     The United States' claims are barred, in whole or in part, due to failure to mitigate damages.

31.     The United States' claims are barred, in whole or in part, because the United States' alleged damages and injuries are not attributable to any act, conduct, or omission on the part of Regeneron.

32.     The government's claim for penalties and treble damages cannot be upheld to the extent it violates or contravenes the holding of the United States Supreme Court in *BMW of North America v. Gore*, 517 U.S. 559 (1996).

33.     The claims for damages are barred because the government has suffered no actual injury.

34.     The United States' claims are barred, in whole or in part, because the alleged damages, if any, are speculative, and because of the impossibility of proof of any alleged damages.

35.     Regeneron believes it will prevail on the merits and demonstrate that it correctly calculated EYLEA's ASP.  However, should the Court or jury find that (1) Regeneron should have deducted credit card processing fees when calculating EYLEA's ASP and (2) the deduction of these credit card processing fees would have reduced EYLEA's ASP, then Regeneron is entitled

to recoupment or set off of any damages awarded.  If this Court or a jury determines that EYLEA's ASP should have been lower, it means that EYLEA's Average Manufacturer Price ("AMP") should *also* have been lower.  This in turn means that Regeneron *overpaid* the United States, because Regeneron paid Medicaid rebates that were too high, and states shared a portion of those rebates with the United States through reductions in Federal Medical Assistance Percentage ("FMAP") payments from the United States to the states.  In this scenario, Regeneron is entitled to recoupment or a set off.

By alleging the matters set forth in these Affirmative Defenses, Regeneron does not allege or admit that it bears the burden of proof and/or persuasion with respect to any of these matters. Regeneron's investigation is continuing, and it reserves the right to assert such additional affirmative defenses as may be appropriate based on additional information obtained through discovery or otherwise.

Regeneron respectfully requests that the Court dismiss the United States' claims with prejudice, award Regeneron the costs and attorneys' fees incurred by defending this action, and grant other relief as it deems just and proper.

## **COUNTERCLAIMS**

Regeneron asserts these conditional counterclaims against the United States and alleges as follows:

### **Parties**

1. Regeneron is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 777 Old Saw Mill River Road, Tarrytown, New York 10591.

2. The United States brought this action on behalf of HHS.

26

**Jurisdiction and Venue**

3.     The Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a) because the claims are so related to claims in the action filed by the United States that they form part of the same case or controversy under Article III of the United States Constitution.

4.     The Court has personal jurisdiction over the United States because it consented to the jurisdiction of the Court by filing the present action.

5.     Venue is proper in this Court under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391.

**Facts**

6.     Regeneron re-alleges and incorporates by reference ¶¶ 1–144 of the Answer and its Affirmative Defenses as if fully set forth, herein.

7.     Regeneron manufactures EYLEA® (aflibercept) ("EYLEA"), a prescription drug used to treat the leading cause of blindness in elderly Americans, and sells it through specialty distributors.  Those distributors, like millions of other businesses, charge their customers a single price regardless of whether they pay by cash or credit.  Financial institutions charge distributors to process credit card purchases of EYLEA, and Regeneron reimburses those distributors for the cost of these transaction fees.

8.     EYLEA is a "buy-and-bill" drug, which means that physicians typically buy it from a manufacturer or a distributor and then bill Medicare, Medicaid, or private insurance companies after administration to a patient.

9.     Under Part B, Medicare reimburses healthcare providers for products such as EYLEA that are administered in an outpatient setting.  42 U.S.C. § 1395, *et seq*.

10.    Under the Medicare Modernization Act, Medicare determines reimbursement amounts for prescription drugs using a statutory formula based on ASP.  *See* 42 U.S.C. §§ 1395w-4(a)(1), 1395u(o)(1), 1395x(s)(2)(A), 1395w-3a; 42 C.F.R. § 414.904.  The reimbursement amount is set by statute and is typically 106% of ASP.  42 U.S.C. §§ 1395w-4(a)(1), 1395w-3a(b)(1)(B).

11.    At a high level, ASP is the average sales price of a drug, minus specific "price concessions" enumerated by Congress.  *See generally* 42 U.S.C. § 1395w–3a(c)(1)(A)–(B).

12.    Bona fide service fees are "not considered price concessions" for purposes of the ASP calculation, and these fees are thus not subtracted from ASP.  42 C.F.R. § 414.804(a)(2)(ii).

13.    The United States alleges that Regeneron's reimbursement of credit card processing fees is not a bona fide service fee, but is instead a price concession that Regeneron should have deducted from the ASP, pursuant to 42 U.S.C. § 1395w-3a.  And the United States further alleges that if the credit card processing fees had been deducted it would have reduced EYLEA's ASP.  *See* United States' Complaint in Intervention, ECF No. 58 ("Compl.").

14.    However, if the United States is correct—a point Regeneron vigorously disputes—it means that EYLEA's AMP was too high.  When a patient covered by Medicaid is administered a drug, the manufacturer of the drug is required to pay a portion of the drug's AMP back to the state as a rebate.  *See* 42. U.S.C.  § 1396r-8(a)(1), (b)(1).  The state must then share a portion of the rebate with the United States government.  *See* 42 U.S.C. § 1396r-8(b)(1)(B), (C); 42 C.F.R. § 447.509(c).  If EYLEA's AMP was too high, it means that Regeneron paid too much in Medicaid rebates for EYLEA, and both the Intervening States and the United States received too much money as a result.

15.    AMP is defined as the "average price paid to the manufacturer for the drug" by certain entities and subject to certain exclusions.  42 C.F.R. § 447.504(a); *see also* 42 U.S.C. § 1396r-8(k)(1).

16.    As a general matter, if a service fee to a customer is not a bona fide service fee, it must be deducted from the sales prices considered in calculating AMP.  *See* 42 U.S.C. § 1396r-8(k)(1)(B)(II).

17.    The amount paid by the United States to state Medicaid programs is called the Federal Medical Assistance Percentage ("FMAP").  42 U.S.C. § 1396d(b).  Any amount not covered by FMAP is paid by the state.  *Id.* §§ 1396b(a), 1396d(b).

18.    The Intervening States' Medicaid programs, with the support of FMAP payments by the United States (subject to certain federal offsets), provide medical assistance to (*i.e.*, reimburse) providers who administer EYLEA to Medicaid patients.  *Id.* §§ 1396b(a), 1396d(a)-(b), 1396r-8(b)(1)(B), (C).

19.    For a manufacturer's drugs to qualify for payment under Medicaid or Medicare Part B, the Medicaid Drug Rebate Program requires a manufacturer to enter into an agreement with the HHS.   Under this agreement, when a patient with Medicaid is administered a drug, the manufacturer of the drug is required to pay a portion of the drug's AMP back to the state as a rebate.  *See* 42. U.S.C.  § 1396r-8(a)(1), (b)(1).

20.    The state effectively shares a portion of the rebate paid by the manufacturer with the United States.  This is because the Medicaid rebates paid to the states by drug manufacturers are taken into account when the United States calculates its FMAP payments to the states.  When the rebate amount paid by a drug manufacturer is higher, it lowers the net reimbursement amount the state pays for the manufacturer's drug under the Medicaid program.  The FMAP paid by the

United States is then applied to the lower net reimbursement amount for the drug, which means that the United States makes a lower FMAP payment to the states. *See* 42 U.S.C. §§ 1396b(a), 1396d(b), 1396r-8(b)(1)(B), (C); 42 C.F.R. § 447.509(c).

21.     If a drug's AMP is lower, it means that the Unit Rebate Amount paid by the manufacturer to the state under the Medicaid Drug Rebate Program is lower, and the state Medicaid program receives less money in rebates such that the net reimbursement amount is higher. As a result, if a drug's AMP is lower, the federal government must make a larger FMAP payment to the state because the net reimbursement amount is higher. If Regeneron's AMP should have been lower, it means that the federal government should have paid more money to the states under the FMAP.

22.     Regeneron has entered into an agreement with HHS to pay quarterly rebates to states under the Medicaid Drug Rebate Program. Regeneron has paid a rebate, called the Unit Rebate Amount, to states for every qualifying EYLEA unit paid for under the state's Medicaid plan.

23.     EYLEA's Unit Rebate Amount is calculated based on a statutory percentage of AMP for all periods relevant to this case.

24.     Regeneron's counterclaims arise out of the same transaction or occurrence about which the United States filed suit.

25.     This means that if the United States' allegations that (1) Regeneron's reimbursement of credit card processing fees is not a bona fide service fee and is instead a price concession that Regeneron should have deducted from the ASP, and (2) the treatment of credit card processing fees as price concessions would have reduced EYLEA's ASP, are correct, which Regeneron vigorously disputes, EYLEA's AMP was too high. As explained, if EYLEA's AMP

was too high, it means that Regeneron paid too much in Medicaid rebates for EYLEA, and the United States received too much money as a result.

26.     Without any admissions hereto, and on the conditions that the Court or jury finds that (1) credit card processing fees should have been treated as price concessions when calculating ASP and (2) the treatment of credit card processing fees as price concessions would have reduced EYLEA's ASP, then the United States received funds to which it was not entitled in the form of inflated Medicaid rebates, which the states shared with the United States through lower FMAP payments.  Regeneron brings these conditional counterclaims to recoup or set off any excess amounts received by the United States through inflated Medicaid rebates, and seeks a conditional declaratory judgment from this Court that Regeneron paid inflated Medicaid rebates to the state Medicaid programs.

## Count I
## Recoupment

27.     Regeneron re-alleges and incorporates by reference the allegations of Paragraphs 1 through 26.

28.     Regeneron asserts a conditional counterclaim against the United States for recoupment with respect to the Medicaid claims at issue in the *Qui Tam* Intervening States' and Non-*Qui Tam* Intervening States' complaints against Regeneron.  *See, e.g.*, ECF No. 128, at ¶¶ 112, 115, 118, 122, 125, and 129; ECF No. 203, at ¶¶ 94, 97, 101, 104, and 107.

29.     Should the Court or jury find that (1) Regeneron should have deducted credit card processing fees when calculating EYLEA's ASP and (2) the deduction of these credit card processing fees would have reduced EYLEA's ASP, then the Unit Rebate Amount that Regeneron paid state Medicaid programs was too high, and the share of Medicaid rebates received by the

United States was too high.  This means that the United States received funds from Regeneron to which it was not entitled.

Accordingly, Regeneron would be entitled to recoup the excess share of Medicaid rebate amounts paid to the United States to which the United States was not entitled.

**Count II**
**Set Off**

30.    Regeneron re-alleges and incorporates by reference the allegations of Paragraphs 1 through 26.

31.    Regeneron asserts a conditional counterclaim against the United States for set off with respect to the share of Medicaid rebates received by the United States for all Medicaid claims for the relevant time period, from 2011 to present.

32.    Should the Court or jury find that (1) Regeneron should have deducted credit card processing fees when calculating EYLEA's ASP and (2) the deduction of the credit card processing fees would have reduced EYLEA's ASP, then the Unit Rebate Amount that Regeneron paid state Medicaid programs was too high, and the share of Medicaid rebates received by the United States was too high.  This means that the United States received funds from Regeneron to which it was not entitled.

33.    Accordingly, Regeneron would be entitled to set off of any excess share of Medicaid rebate amounts paid to the United States to which the United States was not entitled.

**Count III**
**Unjust Enrichment**

34.    Regeneron re-alleges and incorporates by reference the allegations of Paragraphs 1 through 26.

35.     Regeneron asserts a conditional counterclaim against the United States for unjust enrichment with respect to the share of Medicaid rebates received by the United States for all Medicaid claims for the relevant time period, from 2011 to present.

36.     Should the Court or jury find that (1) Regeneron should have deducted credit card processing fees when calculating EYLEA's ASP and (2) the deduction of these credit card processing fees would have reduced EYLEA's ASP, then the Unit Rebate Amount that Regeneron paid the state Medicaid program was too high, thereby conferring a benefit on the United States. This means that the United States received and retained funds from Regeneron to which the United States was not entitled.

37.     The United States knew and appreciated this benefit.

38.     Under the circumstances, it would be inequitable for the United States to retain the value of the benefit conferred by Regeneron.

39.     Accordingly, Regeneron would be entitled to the recovery of funds by which the United States has been unjustly enrichment at the expense of Regeneron in an amount to be determined, which in equity and good conscience and as dictated by the needs of justice and fairness, should be returned to Regeneron.

**Count IV**
**Declaratory Relief, 28 U.S.C. § 2201**

40.     Regeneron re-alleges and incorporates by reference the allegations of Paragraphs 1 through 26.

41.     Should the Court or jury find that (1) Regeneron should have deducted credit card processing fees when calculating EYLEA's ASP and (2) the deduction of the credit card processing fees would have reduced EYLEA's ASP, then the Unit Rebate Amount that Regeneron paid the Medicaid programs was too high, and the share of Medicaid rebates received by the United

States was too high. This means that the United States received funds from Regeneron to which they were not entitled.

42. If Regeneron paid—and is continuing to pay—the United States funds to which it is not entitled, an actual, present, and justiciable controversy is present between the United States and Regeneron concerning Regeneron's treatment of credit card processing fees in ASP and AMP calculations. In this conditional counterclaim, Regeneron seeks a declaratory judgment from the Court that Regeneron paid and continues to pay inflated Medicaid rebates based on Regeneron's treatment of credit card processing fees as bona fide service fees in AMP calculations.

WHEREFORE, Regeneron respectfully requests that the Court enter the following relief in its favor and against the United States in the event that the Court or jury find that (1) Regeneron should have deducted credit card processing fees when calculating EYLEA's ASP and (2) the deduction of the credit card processing fees would have reduced EYLEA's ASP:

A. Judgment in favor of Regeneron on this Counterclaim;

B. Recoupment and/or set off of the excess amount of Medicaid rebates paid by Regeneron;

C. A declaration that Regeneron paid and continues to pay inflated Medicaid rebates; and

D. Any other relief that is appropriate.

Regeneron reserves the right to amend its Answer and Counterclaim to raise additional defenses or counterclaims as warranted by subsequent investigation or analysis.

Regeneron acknowledges the United States' request for a jury trial and, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, also demands a jury trial on all issues so triable.

Dated: August __, 2025

Respectfully submitted,

REGENERON PHARMACEUTICALS,

INC. By its attorneys,

*/s/ Gregory F. Noonan*
Gregory F. Noonan (BBO No. 651035)
Katherine B. Wellington (BBO No. 688577)
HOGAN LOVELLS US LLP
125 High Street, Suite 2010
Boston, MA 02110
(617) 371-1000
gregory.noonan@hoganlovells.com
katherine.wellington@hoganlovells.com

Gejaa T. Gobena (admitted *pro hac vice*)
Mitchell J. Lazris (admitted *pro hac vice*)
Emily M. Lyons (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
(202) 637-5600
gejaa.gobena@hoganlovells.com
mitch.lazris@hoganlovells.com
emily.lyons@hoganlovells.com

## CERTIFICATE OF SERVICE

I hereby certify that on August __, 2025, the foregoing was served by electronic mail on all counsel of record.

*/s/ Gregory F. Noonan*
Gregory F. Noonan

35