UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel.* JULIANNE NUNNELLY and MATTHEW SHANKS<br><br>            Plaintiffs,<br>v.<br><br>REGENERON PHARMACEUTICALS, INC.,<br>            Defendant. | No. 20-cv-11401-PBS<br><br>Leave to file granted on November 12, 2025 |

**REGENERON'S SUR-REPLY IN SUPPORT OF OPPOSITION TO
NON-*QUI TAM* INTERVENING STATES' MOTION TO DISMISS**

Prior to this litigation, the federal government refused to publicly publish any guidance to companies regarding how to treat credit card service fees. Indeed, to this day, the federal government has declined to provide a list of service fees that the government considers bona fide (or not). *See* 71 Fed. Reg. 69,624, 69,668 (Dec. 1, 2006) (declining manufacturer requests to publish such a list); *see* 90 Fed. Reg. 49,266, 49,541 (Nov. 5, 2025) (again declining to publish a list of example fees—despite almost *two decades* of requests for CMS to provide "clear guidance"). Rather than announcing the rules of the road through rulemaking, both the federal government and the States are suing Regeneron for hundreds of millions of dollars (pre-trebling) for not treating credit card service fees as price concessions that must be deducted from ASP.

Regeneron will vigorously defend against Plaintiffs' claims. But if this Court (or a jury) rules for Plaintiffs, then it means that Regeneron has been overpaying the States with respect to Medicaid rebates. All Regeneron seeks through its counterclaims is to recoup or setoff any damages awarded to the States against the benefit that the States in that scenario undoubtedly

1

received. That's a fair outcome. And it flows directly from the States' position—if the States are correct that EYLEA's ASP was too high, then it means that EYLEA's AMP was too high as well, and that the States significantly benefitted *for years* from Regeneron's Medicaid rebates, accepting that money without complaint.

The States refuse to accept that equitable result. They instead seek a double-dip recovery: They want Regeneron to make up the difference if EYLEA's ASP should have been lower, *without* reimbursing Regeneron if EYLEA's AMP also should have been lower. But sovereign immunity doesn't work that way. It protects a state that has *not* filed suit from litigation seeking money from the state's coffers. It does not shield a state that affirmatively comes to court and seeks damages from a defendant. In that situation, the defendant is permitted to defend against the suit, including by filing a counterclaim seeking recoupment or setoff against any damages awarded.

Rather than address these equitable concerns, the States fight about what standard to apply to evaluate Regeneron's counterclaims. But there is no fight to be had: It is well-established in this District and Circuit that if there is a "logical relation" between the claims and counterclaims, it means the counterclaims are compulsory, and the defendant is entitled to bring them against the State. *Massachusetts v. Wampanoag Tribe of Gay Head*, 98 F. Supp. 3d 55, 73 (D. Mass. 2015); *Kress Stores of P.R., Inc. v. Wal-Mart P.R., Inc.*, 121 F.4th 228, 245 (1st Cir. 2024) (per curiam). Here, the "logical relation" standard is undoubtedly met: Regeneron's counterclaims seek to recoup or setoff damages for the *very same credit card transactions*, purchasing *the very same drug*, under *the very same Medicaid regime*.

This Court should thus permit Regeneron's counterclaims to proceed (and decline to dismiss Regeneron's affirmative defense seeking recoupment and setoff). The States baldly claim that Regeneron "decided to omit the credit card fee rebates from the AMP calculation for Eylea . . .

to conceal its fraudulent reporting of ASP," Reply 11, but the States cite nothing to support that notion. Regeneron treated credit card service fees consistently across ASP and AMP because the definition of "bona fide service fee" is equivalent in both regimes.[1] Indeed, Regeneron faced a *substantial threat of litigation* no matter how it treated credit card service fees, given the lack of guidance from the government. If Regeneron had concluded that credit card service fees were *not* bona fide service fees—and were instead price concessions that must be deducted from ASP and AMP—it could just as easily be defending a suit claiming that Regeneron understated its AMP, and thus underpaid Medicaid rebates to States. *See United States ex rel. Streck v. Bristol-Myers Squibb Co.*, 2018 WL 6300578, at *1 (E.D. Pa. Nov. 29, 2018) (False Claims Act litigation alleging underpayment of Medicaid rebates); *United States ex rel. Streck v. Allergan, Inc.*, 894 F. Supp. 2d 584, 590 (E.D. Pa. 2012), *aff'd sub nom. United States v. Allergan, Inc.*, 746 F. App'x 101 (3d Cir. 2018) (same).

The States claim Regeneron's counterclaims are not ripe, but that makes no sense. Regeneron's counterclaims kick in *only if* the States prove that Regeneron improperly calculated ASP, and *only if* the States recover money against Regeneron. In that scenario, it is appropriate to determine the extent to which the States' damages should be setoff or recouped by the benefit to the States from the very same conduct they are challenging. The States can't have it both ways: If they are correct that EYLEA's ASP was too high, it means that EYLEA's AMP was too high, and that Regeneron is entitled to recoupment or setoff against any damages awarded.

---

[1] To be clear, Regeneron maintains that it was not required to deduct credit card service fees from ASP because those fees (1) are not included on the list of enumerated price concessions in the ASP statute and regulation, (2) are not price concessions in any event, and (3) do not meet the definition of a bona fide service fee.

## ARGUMENT

### I. By Filing This Suit, The Non-*Qui Tam* Intervening States Waived Sovereign Immunity With Respect To Regeneron's Counterclaims.

The States do not dispute that by filing this suit—and alleging that Regeneron should have treated credit card service fees differently—they have waived immunity as to counterclaims that arise from the same transaction or occurrence as their claims. Reply 9. The States also do not dispute that if EYLEA's AMP was too high, then Regeneron overpaid Medicaid rebates—and the States pocketed too much money from Regeneron. They instead fight over a technicality: They assert that the First Circuit's test for determining whether claims arise from the same transaction or occurrence—which examines whether the claims have a "logical relation"—does not apply. *See id.* at 9-10. According to the States, there is a *different* "same transaction or occurrence" test that applies solely when a state invokes the Eleventh Amendment. That makes no sense. There is no reason to apply two different legal tests to determine whether claims arise from the same transaction or occurrence. Unsurprisingly, the States do not cite any case explaining what that alternative test might be.

The States cite *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993), which they claim did not apply the "logical relation" test. Reply 9-10. But that case supports Regeneron, not the States. *Genentech* did not reject the logical relation test; it did not opine on that test at all, and instead remanded so the district court could determine whether the requirements for a compulsory counterclaim were met. *See* 998 F.2d at 948 (remanding to determine "which of Genentech's . . . counts meet the criteria of defenses and compulsory counterclaims"). *Genentech* strongly supports Regeneron's argument that the States waived sovereign immunity, because it held that the same test for determining whether a counterclaim is compulsory applies when

4

evaluating whether a state has waived sovereign immunity. *See id.* at 947. In the First Circuit, that is the logical relation test. *See Kress*, 121 F.4th at 245.

The States also cite *Iglesias v. Mutual Life Insurance Co. of New York*, 156 F.3d 237 (1st Cir. 1998), and *McCaffrey v. Rex Motor Transp., Inc.*, 672 F.2d 246 (1st Cir. 1982) (per curiam), *see* Reply 10-13, but those cases again show that Regeneron should be permitted to litigate its counterclaims. In *Iglesias*, the First Circuit identified the "logical relation" test as one of "*four tests*" used by courts to determine whether a counterclaim is compulsory. 156 F.3d at 241 (emphasis added). It did not, contrary to the States' suggestion, identify it as one "factor" in a four-factor test. Reply 10. Indeed, in *Kress*—the First Circuit's most recent discussion of this issue—the court expressly held that under *Iglesias*, "the 'transaction or occurrence' standard *requires only* a 'logical relation' between the claims." 121 F.4th at 245 (emphasis added) (quoting *Iglesias*, 156 F.3d at 241, and citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593 (1926)). As for *McCaffrey*, the First Circuit there likewise explained that the "'logical relationship' test" is a test for determining if counterclaims are compulsory—not a factor of a test—and that this test "enjoys 'by far the widest acceptance among the courts.'" *McCaffrey*, 672 F.2d at 248 (citing 6 Wright & Miller, Federal Practice and Procedure § 1410, at 48 (1971)).

The States do not engage with the governing First Circuit standard because they know it has been met. There is plainly a logical relation between the States' claims and Regeneron's counterclaims. These claims are governed by the same Medicaid statutory and regulatory regime. *See* ECF No. 203 ("States' Compl."), ¶¶ 3-6; ECF No. 220 ("Counterclaims"), 38-39 ¶¶ 18-24; ECF No. 246 ("Opposition"), 4-6. They arise out of the same credit card transactions to purchase the same drug. Opposition 11. And they involve two different sides of those transactions—the States' reimbursements of the physicians' purchases of EYLEA, which in turn triggers

5

Regeneron's rebates to the States *based on those very same purchases*. *Id.* at 13. Indeed, Regeneron's counterclaims exist only if the States prevail on their claims before this Court, because if the States show that EYLEA's ASP was too high—which Regeneron vigorously disputes—it means that EYLEA's AMP was too high, and that Regeneron overpaid the States through Medicaid rebates. *Id.* at 14.

For all these same reasons, even if this Court were to conclude that something other than the "logical relation" test applies, it should hold that Regeneron's counterclaims arise out of the same transaction or occurrence and should be permitted to proceed. *See id.* at 11-14 (further explaining why Regeneron's counterclaims are not barred by sovereign immunity).[2] The reason a defendant is permitted to litigate compulsory counterclaims in a suit brought by the state is fairness: It is "unfair to allow a state to bring a claim in federal court while simultaneously invoking sovereign immunity to shield itself from counterclaims arising out of the same transaction or occurrence." *Bergemann v. R.I. Dep't of Env't Mgmt.*, 665 F.3d 336, 341-342 (1st Cir. 2011). Here, that is precisely what the States are trying to do. The States are seeking damages based on Regeneron's treatment of credit card service fees, while simultaneously seeking to block Regeneron from recouping or offsetting damages to the extent the States benefitted from that very same treatment of credit card service fees.

---

[2] The Court should reject the States' "four factor" test, Reply 10-14, which is not supported by First Circuit precedent. Even if the Court were to apply it, the counterclaims do not involve "entirely different facts and law," as the States suggest. *Id.* at 11; *infra* at p. 8. Indeed, although the States claim that Regeneron could try to seek restatement of its AMP with CMS, they do not claim and cannot guarantee that CMS would permit Regeneron to restate its AMP and receive payments back from the States for the entire period at issue in this litigation; Regeneron's only clear path to recover its overpayment to the States (should the States succeed on their claims) is through recoupment or setoff here.

6

The States recognize that *United States ex rel. Ramadoss v. Caremark, Inc.*, 2010 WL 11507448 (W.D. Tex. June 8, 2010), is directly contrary to their position, and they spend pages trying to distinguish it.  *See* Reply 14-18.  But the best they can come up with is the *Ramadoss* court's supposed "misunderstanding of the interaction between Medicaid rebates and pharmacy claims."  *Id.* at 14.  The *Ramadoss* court understood the regulations at issue in that case perfectly well—and spent pages discussing them (*see* 2010 WL 11507448, at *6-9)—but that is beside the point because the regulations at issue there are not the same as the regulations at issue here.  What is relevant is the *Ramadoss* court's holding that, "[w]here a state voluntarily becomes a party to a cause, and submits its rights for judicial determination, it cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment."  *Id.* at *3 (alteration omitted) (quoting *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906)).  The court in *Ramadoss* permitted the defendant to litigate its counterclaim because the states were "seek[ing] money for falsely denied or underpaid claims," and the defendant "in turn [sought] a reduction of any such amount awarded based upon any amount by which the States were overpaid."  *Id.* at *6.  That is all Regeneron is seeking here:  To reduce any amount awarded to the States based on the amount by which the States were overpaid, where the same sales affect both sides of the ledger.

The States further argue that *Ramadoss* is distinguishable because here, unlike in *Ramadoss*, Regeneron would not be "barred from seeking to revise its AMP calculations" in a separate proceeding if it does not prevail in this case.  Reply 17.  But that is just an attempt—without using the words "res judicata"—to insist that a res judicata test must be satisfied before a claim can be found compulsory.  That is not the law.  *See Kress*, 121 F.4th at 245 ("'transaction or occurrence' standard requires only a 'logical relation' between the claims" (quoting *Iglesias*, 156 F.3d at 241)); *Eon Labs., Inc. v. Smithkline Beecham Corp.*, 298 F. Supp. 2d 175, 179-180 (D.

7

Mass. 2003) (citing *Iglesias*, 156 F.3d at 241); *Pub. Works Supply Co. v. Soleno, Inc.*, 2008 WL 11389371, at *3-4 (D. Mass. May 22, 2008) (same); *see also Laddawn, Inc. v. Bolduc*, 2018 WL 7047647, at *5 (D. Mass. Dec. 27, 2018) (applying the logical relation test).  The States thus cite no persuasive reason to disregard *Ramadoss*, an on-point decision that is consistent with First Circuit law; nor do they cite any case supporting their position on remotely similar facts.

The States contend that this Court should find sovereign immunity because they say Regeneron's counterclaims involve "different facts and law" than the States' claims.  *See* Reply 11-14.  But the legal standard in this Circuit is not whether there are *some* differences in fact or law.  The question is whether Regeneron's counterclaims arise from the same transaction or occurrence as the States' claims, and the answer to that question clearly is yes.  As explained throughout Regeneron's briefing, the parties' claims involve the same credit card transactions under the same Medicaid reimbursement regime, the same definition of bona fide service fees, and the same facts and legal issues that Regeneron intends to raise as part of its defense on the merits.  *See* Opposition 10-14.  This is precisely the situation in which Regeneron should be permitted to litigate its counterclaims.

The States also claim that this Court should deny Regeneron's counterclaims because (they assert) the counterclaims will require additional experts and evidence.  *See* Reply 11-14.  The States do not explain, however, what additional experts would be needed; Regeneron's counterclaims are based on the same Medicaid scheme as the States' claims, and the damages calculations can be addressed by the same experts and with reference to the overlapping facts and discovery that already will be produced in this case.  More fundamentally, the States ignore that Regeneron's decision regarding how to treat credit card service fees for government price reporting purposes impacts *both* ASP *and* AMP, and that it is exposed to False Claims Act liability regardless

8

of its decision. If Regeneron had treated credit card service fees as price concessions, it very well could be facing suit right now from states claiming that Regeneron underpaid Medicaid rebates. *See Streck*, 2018 WL 6300578, at *1. This crucial issue is central to both the States' claims and Regeneron's counterclaims.

The States contend that Regeneron is wrong that it would be entitled to recoupment or a setoff, even if the States prevail on their claims. *See* Reply 6-8. Regeneron obviously disagrees, but that is an issue to be litigated on the merits, not a basis to dismiss Regeneron's counterclaims on sovereign immunity grounds. At this stage of the proceedings, the Court is required to accept Regeneron's well-pleaded facts as true, and Regeneron has alleged that if Regeneron's ASP was too high, Regeneron overpaid Medicaid rebates and is entitled to recoupment or setoff. *See* Counterclaims 40 ¶¶ 28-29. And in any event, the States' assertions are wrong.

For instance, the States assert that AMP is "narrower" than ASP and based on "a limited set of sales." Reply 7. That is incorrect. For products like EYLEA, AMP is typically calculated based on a broad set of sales. *See* 42 U.S.C. § 1396r-8(k)(1)(B)(i)(IV); 42 C.F.R. §§ 447.504(d), (e), 447.507. The States assert that a lower AMP may not necessarily result in a lower Medicaid rebate, which may be based on Best Price. Reply 3, 8. That is mathematically incorrect. The basic rebate for EYLEA is the greater of 23.1% of AMP or the difference between AMP and Best Price. Under either formula, a lower AMP will always generate a lower basic rebate. *See* Counterclaims 40 ¶ 27; *see also* 42 U.S.C. § 1396r-8(c)(1)(A)-(B); 42 C.F.R. § 447.509(a)(1). The States further assert that Regeneron would have made money on Medicaid claims due to a higher AMP, even if it meant a higher rebate. Reply 6 n.2. But as the States acknowledged in their Reply, even if a state Medicaid program paid only a small portion of the reimbursement for a drug, the state Medicaid program is "entitled to receive the full amount of the drug's unit rebate amount."

9

*Id.* at 16 n.3. A manufacturer's rebate payments to a state Medicaid program may thus outstrip any payment made by the state Medicaid program for a particular claim.

The States' final attempt to hide behind sovereign immunity is their claim that declaratory judgment cannot be awarded against the States. Reply 17-18. But Regeneron is not seeking a declaratory judgment from this Court "allowing Regeneron to restate the historical AMP Regeneron reported to CMS," as the States contend. *Id.* Regeneron seeks a declaratory judgment that "Regeneron paid and continues to pay inflated Medicaid rebates" as a result of its treatment of credit card service fees, which is a legal ruling that this Court must make before it determines the appropriate setoff or recoupment. Counterclaims 51-52 ¶ 101; *see Wampanoag Tribe of Gay Head*, 98 F. Supp. 3d at 74 (holding that declaratory judgment request may "qualify as defensive counterclaims that would ordinarily be cognizable against a state plaintiff"). And even if this Court were to conclude that Regeneron's request for declaratory relief is barred by sovereign immunity, it would not impact Regeneron's request for recoupment and setoff.

The States must take the bitter with the sweet. If they are successful on their claims—and they should not be—then Regeneron is entitled to seek recoupment or setoff against any damages award.[3]

## II. Regeneron's Counterclaims Are Ripe.

This Court should likewise reject the States' ripeness argument. Regeneron's counterclaims are appropriately litigated in this case *because they are a direct consequence of the possibility of the States winning on their claims before this Court*. If the States are entitled to damages because EYLEA's ASP was too high, then Regeneron is entitled to recoupment or setoff

---

[3] The States have requested that the Court strike Regeneron's 35th affirmative defense, in addition to dismissing its counterclaims. Reply 1. This affirmative defense claims recoupment or setoff against any damages awarded. ECF No. 220 at 34-35. This Court should decline to strike that defense for the same reasons that it should deny the States' motion to dismiss.

10

because EYLEA's AMP was too high. Regeneron's counterclaims should be litigated in this proceeding, so that the Court can make an appropriate accounting of any damages awarded to the States, taking into consideration the *benefit* to the States from Regeneron's treatment of credit card service fees.

The States claim that because Regeneron could submit revised AMP calculations "right now," Reply 19, Regeneron's counterclaims are not ripe. But the States do not contend that Regeneron *must* submit revised AMP calculations before bringing these counterclaims. Nor could they; CMS regulations permit Regeneron to seek a court order *before* submitting revised AMP calculations. 42 C.F.R. § 447.510(b)(1)(v). And although the States claim that Regeneron could seek to restate its AMP, Regeneron does not have a basis for doing so, given that it believes it has correctly interpreted the ASP and AMP statutes and regulations. That is why Regeneron is raising this issue as a counterclaim—Regeneron does not believe it has any ground for recovering overpayments from the States *unless* the States can prove that credit card service fees are price concessions, and not bona fide service fees, contrary to how Regeneron treated those fees for years, without any contrary guidance from the government. In the context of this litigation, moreover, it is up to this Court or a jury to determine if Regeneron is entitled to recoupment or a setoff on the ground that it overpaid Medicaid rebates. That is an issue for decision by this tribunal, not by CMS.

The very reason Regeneron is before this Court is because the federal government and the States have decided to proceed through False Claims Act litigation, rather than through a sensible regulatory process where the government informs regulated entities how to treat credit card service fees *before* they make the necessary judgment calls and *before* the federal government files suit. By filing counterclaims, Regeneron seeks only to foreclose the government's ability to double-dip

by seeking damages from Regeneron in connection with its ASP calculations, without returning the corresponding rebates that Regeneron in that situation *overpaid* in connection with its AMP calculations. If the States ultimately prevail in this litigation and are awarded damages, then Regeneron should be entitled to recoupment or setoff to the extent the States benefitted from the very action they are challenging.

## CONCLUSION

For the foregoing reasons, Regeneron respectfully requests that the Court deny the Non-*Qui Tam* Intervening States' Consolidated Motion to Dismiss Counterclaims.

Dated: November 18, 2025

Respectfully submitted,

REGENERON PHARMACEUTICALS, INC.

By its attorneys,

/s/ *Gregory F. Noonan*

| | |
|---|---|
| Paul D. Clement (admitted *pro hac vice*) | Katherine B. Wellington (BBO No. 688577) |
| Matthew D. Rowen (admitted *pro hac vice*) | Gregory F. Noonan (BBO No. 651035) |
| Kevin Wynosky (admitted *pro hac vice*) | HOGAN LOVELLS US LLP |
| CLEMENT & MURPHY, PLLC | 125 High Street, Suite 2010 |
| 706 Duke Street | Boston, MA 02110 |
| Alexandria, VA 22314 | (617) 371-1000 |
| (202) 742-8900 | katherine.wellington@hoganlovells.com |
| paul.clement@clementmurphy.com | gregory.noonan@hoganlovells.com |
| matthew.rowen@clementmurphy.com | |
| kevin.wynosky@clementmurphy.com | Gejaa T. Gobena (admitted *pro hac vice*) |
| | Mitchell J. Lazris (admitted *pro hac vice*) |
| Enu Mainigi (admitted *pro hac vice*) | Emily M. Lyons (admitted *pro hac vice*) |
| Jennifer G. Wicht (admitted *pro hac vice*) | HOGAN LOVELLS US LLP |
| Ellen E. Oberwetter (admitted *pro hac vice*) | 555 Thirteenth St. NW |
| Andrew V. Trask (admitted *pro hac vice*) | Washington, D.C. 20004 |
| Miranda R. Petersen (admitted *pro hac vice*) | (202) 637-5600 |
| WILLIAMS & CONNOLLY LLP | gejaa.gobena@hoganlovells.com |
| 680 Maine Avenue SW | mitch.lazris@hoganlovells.com |
| Washington, D.C. 20024 | emily.lyons@hoganlovells.com |
| (202) 434-5000 | |
| emanigi@wc.com | |
| jwicht@wc.com | |
| eoberwetter@wc.com | |
| atrask@wc.com | |
| mpetersen@wc.com | |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2025, a copy of the foregoing document, filed through the Electronic Case Management system, will be sent electronically to registered participants identified in the Notice of Electronic Filing.

/s/ *Gregory F. Noonan*
Gregory F. Noonan