# Exhibit B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

United States et al. ex rel. Nunnelly and Shanks
*Plaintiff*
v.
Regeneron Pharmaceuticals, Inc.
*Defendant*

Civil Action No. 20-cv-11401-PBS

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: EyePoint Pharmaceuticals Inc.
480 Pleasant Street Suite C-400, Watertown, MA 02472
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Silva Kettlewell + Pignatelli LLP<br>10 High St, Suite 505<br>Boston, MA 02110 | Date and Time:<br>Mar. 11, 2026 5 pm ET |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: Feb. 9, 2026

*CLERK OF COURT*

_______________________
*Signature of Clerk or Deputy Clerk*

OR

/s/ Joseph G. Catalanotto
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Regeneron Pharmaceuticals, Inc. , who issues or requests this subpoena, are:

Joseph G. Catalanotto; jcatalanotto@wc.com 680 Maine Ave. SW, Washington, DC 20024; (202) 434-5000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 20-cv-11401-PBS

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A
# REQUESTS TO EYEPOINT PHARMACEUTICALS INC. FOR PRODUCTION OF DOCUMENTS

## I. DEFINITIONS

Notwithstanding Any definition set forth below, Each word, term, or phrase used in these requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts ("Local Rules"), and this Court's rules. The following definitions are applicable to these requests.

1. "Any" shall be construed to Include the word "All" and vice versa.
2. "Average Manufacturer Price" ("AMP") shall have the same meaning as in 42 U.S.C. § 1396r-8(k) and 42 C.F.R. § 447.504.
3. "Average Sales Price" ("ASP") shall have the same meaning as in 42 U.S.C. § 1395w-3a and 42 C.F.R. § 414.904.
4. "Best Price" ("BP") shall have the same meaning as in 42 U.S.C. § 1396r-8(c)(1)(C).
5. "Bona Fide Service Fee" shall have the same meaning as in 42 C.F.R. § 414.802 when used for ASP purposes and the same meaning as in 42 C.F.R. § 447.502 when used for AMP purposes.
6. "CMS" means the Centers for Medicare and Medicaid Services, Including Any of its officers, agents, employees, subcontractors, and All other Persons acting or purporting to act on behalf of CMS.
7. "Communication" shall have the same meaning as in Local Rule 26.5(c)(1).
8. "Compound Drug" shall have the same meaning as in 21 U.S.C. § 353a(b).
9. "Concern" and "Concerning" shall have the same meaning as in Local Rule 26.5(c)(7) and mean referring to, describing, evidencing, or constituting.

10. "Credit Card Company" means Any financial institution or network that provides credit cards to consumers and businesses and charges credit card processing fees for processing credit card payments and transactions.
11. "Credit Card Processing Fees" means the fees that a Credit Card Company charges every time it accepts a credit card payment, Including, but not limited to, interchange fees, payment processor fees, and assessment fees.
12. "Department of Justice" means the executive department of the Government of the United States established by the Act to Establish the Department of Justice, ch. 150, 16 Stat. 162 (1870). The term "Department of Justice" includes Any former or present department, branches, bureaus, offices, sections, or subdivisions and past and present employees, officers, political appointments, agents, or representatives. The term also encompasses Any United States Attorneys' Office or "USAO" and the Federal Bureau of Investigation or "FBI."
13. "Dexycu" means the pharmaceutical product called dexamethasone intraocular suspension, which is sold under the brand name DEXYCU®, Including Any dosage or other variation sold by EyePoint Pharmaceuticals.
14. "Distribution Agreement" means Any contract and its ancillary documents, Including but not limited to amendments, exhibits, and statements of work, between You and Any Distributor Relating to EyePoint Pharmaceuticals Physician-Administered Drugs.
15. "Distributor" means Any company with whom EyePoint Pharmaceuticals contracted to distribute Any of its drugs to customers, Including but not limited to Besse Medical, McKesson Corporation, Cardinal Health, and Curascript Specialty Distribution.

16. "Document" means the original and non-identical copies and drafts, regardless of origin or location, of Any writing and Any written, printed, typed, or other graphic or photographic matter of Any kind or description, in draft or final form, Including but not limited to, correspondence, letters, telegrams, facsimiles, cables, telex messages, e-mail, text messages, SMS messages, MMS messages, memoranda, notes, interoffice and interdepartmental Communications, transcripts, minutes of conversations or meetings, reports, studies, Any audio or video recordings, voicemail, contracts, calendar or diary entries, pamphlets, handwritten notes, charts, tabulations, records of meetings, conferences, telephone or other conversations or Communications, and tapes or slides, and other data compilations from which information can be obtained or translated, if necessary, by You through detection devices into reasonably usable form, and All other records kept by electronic, photographic, or mechanical means however denominated, which are in Your possession, custody, or control. If a Document has been prepared in several copies, or additional copies have been made, or copies are not identical (or, which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), Each non-identical copy is a separate Document.

17. "Each" shall be construed to Include the word "Every," and vice versa.

18. "EYLEA" means the pharmaceutical product called aflibercept, which is sold under the brand name EYLEA®, Including Any dosage or other variation sold by Regeneron.

19. "EyePoint Pharmaceuticals" means EyePoint Pharmaceuticals Inc. and Any of its predecessors, parents, subsidiaries, affiliates, segments, departments, branches, groups, operations, units, plans, and divisions.

20. "Physician-Administered Drugs" means drugs and biologicals that are not usually self-administered by a patient and are instead furnished as incident to a physician's professional services, at a physician's office, as described in 42 U.S. Code § 1395x(s)(2)(A)) and includes Dexycu and Yutiq.

21. "HHS" means the former and present Department of Health and Human Services and Any of its operating and staff divisions, Including but not limited to CMS and HHS-OIG. The term shall include Any former or present branches, bureaus, offices, sections of subdivisions, or past or present employees, officers, political appointees, agents, or representatives.

22. "HHS-OIG" means the United States Department of Health and Human Services' Office of the Inspector General, Including Any of its officers, agents, employees, subcontractors, and All other Persons acting or purporting to act on behalf of HHS-OIG.

23. "Including" means "Including but not limited to."

24. "Industry Custom or Practice" means a course of conduct that is commonly observed or regularly followed within an industry.

25. "Manufacturer" has the same meaning as in 42. U.S.C. § 1395w-3a.

26. "Person" shall have the same meaning as in Local Rule 26.5(c)(6).

27. "Physician Practices" shall mean Any individual physician or group, organization, or association of physicians who purchase Any drugs either directly or indirectly from Any Manufacturer, including through a Distributor.

28. "Price Concession" shall refer to the term as it is used in 42 U.S.C. § 1395w-3a(c)(3) and 42 C.F.R. § 414.804.

29. "Reasonable Assumptions" refers to the assumptions that CMS allows Manufacturers to make in the absence of specific guidance when calculating prices, Including but not limited to ASP, AMP, and BP, as referenced in 71 Fed. Reg. 48,982, 49,000 (Aug. 22, 2006), 71 Fed. Reg. 69,624, 69,669 (Dec. 1, 2006), 81 Fed. Reg. 5,170, 5,210 (Feb. 1, 2016), and 83 Fed. Reg. 12,770, 12,785 (Mar. 23, 2018).
30. "Regeneron" means Regeneron Pharmaceuticals, Inc. and Any of its predecessors, parents, subsidiaries, affiliates, segments, departments, branches, groups, operations, units, plants, and divisions.
31. "Reimbursement Employees" means or Any employee who is responsible for providing support to a pharmaceutical company's physician customers Relating to the reimbursement of drugs regardless of employment title or role.
32. "Relate to" and "Relating to" means constituting, mentioning, discussing, describing, reflecting, identifying, dealing with, consisting of, explaining, referring to, containing, enumerating, or in Any way Concerning, in whole or in part, directly or indirectly.
33. "You" or "Your" means EyePoint Pharmaceuticals, or Any of its departments, agencies, officers, agents, employees, subcontractors, and All other Persons acting or purporting to act on behalf of EyePoint Pharmaceuticals individually or collectively.
34. "Yutiq" means the pharmaceutical product called fluocinolone acetonide intravitreal implant, which is sold under the brand name YUTIQ®, Including Any dosage or other variation sold by EyePoint Pharmaceuticals.
35. Each term defined in the foregoing paragraphs encompasses both the capitalized and non-capitalized versions of that term.

36. Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meaning.

## II. INSTRUCTIONS

1. The instructions set forth in Federal Rule of Civil Procedure 45 are incorporated herein by reference.
2. In responding to these Document requests, furnish All Documents that are known or available to You, Including Documents in the possession, custody, or control of You or Any Person acting on Your behalf, regardless of where the Documents may be located. Unless otherwise stated, the fact that a Document is produced by another Person or entity does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical in All respects.
3. If Any part of a Document is responsive to Any request, the entire Document shall be produced. Any Document responsive to a request shall be produced with All attachments, enclosures, or other matter affixed to or incorporated by reference within the Document. To the extent that Documents responsive to Any request are found attached to other Document, by means of paper clips, staples, binder clips, or other means of attachment, such Documents shall be produced together in the same condition as they were found. If Any requested Document or thing cannot be produced in full, produce it to the extent possible, indicating which Document or portion of that document is being withheld and the reason that document is being withheld.
4. Pursuant to Federal Rule of Civil Procedure 45(e), Any Documents produced in response to a discovery request shall be segregated and labeled to show the Document request to which the Documents are responsive and the source and location where the Document was found.

5. Documents responsive to Any discovery request shall be organized as they are kept in their ordinary course. To the extent that Documents are found in file folders, computer disks, hard drives, or other forms of storage that have labels or other identifying information, the Document shall be produced with such file folder and labeling information intact.

6. If objection is made to Any Document request, the reason(s) for the objections shall be stated. If a discovery request cannot be complied with in full, You shall comply with the discovery request to the extent possible, providing a written explanation of why full compliance is not possible. Notwithstanding the assertion of Any objection to production, Any Document as to which an objection is raised containing non-objectionable matter that is responsive to a request must be produced.

7. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, clearly indicate the portions as to which the privilege is claimed. If a Document is redacted or altered in Any fashion, identify as to Each Document the reason for the redaction or alteration. Any redaction must be clearly visible on the redacted Document.

8. If Any privilege or protection is claimed in response to Any Document request, and Any Document, or part thereof, is not provided on the basis of such claim, state the nature of the privilege or protection claimed and the basis for claiming the privilege or protection as to Each Document. Specifically, identify (1) the type of information, response, or Document being withheld, (2) a description of its contents, (3) its author(s)

or Each Person who assisted in preparing the Document and the particular position held by Each Person at the time, (4) All recipients or Persons now in possession of the Document and their particular positions, (5) the date the Document was created, (6) the date(s) the Document was transmitted, and (7) the specific privilege or protection being asserted, All with sufficient particularity to assess the validity of the claim of privilege or protection.

9. To the extent that responsive Documents are kept electronically, they shall be produced in their native format, with sufficient identification of software as required to access and use the Document to the same extent available to You. Electronically stored information and Documents should be produced in electronic format pursuant to a mutually-agreed upon format and protocol by the parties. Any production of Any electronically stored Document, Including but not limited to e-mails, databases, instant messages, and voicemails, shall also Include All metadata for Any such Document.

10. If Any requested Document is known by You to have existed, but no longer exists or is no longer in Your possession, custody, or control, state the disposition of the Document, the last known custodian, the date upon which it was lost, destroyed, or otherwise became unavailable, and the identification of Any Persons who are or are believed to be in possession or control of such Document currently.

11. In the event that no Documents are responsive to a particular request, please specify that You do not possess Any responsive Documents.

12. Unless otherwise noted, the time period for these requests is February 1, 2018 to present.

13. These requests are continuing in nature, and should be supplemented as appropriate. You are therefore requested to provide, by way of supplemental answers or amendments

thereto, such additional Documents as You or Any Person on Your behalf may hereinafter obtain that will augment or modify the Documents initially produced.

## III. DOCUMENT REQUESTS

1. All Documents submitted by You to CMS, HHS, HHS-OIG, the Department of Justice or any other Government agency Related to the treatment of Credit Card Processing Fees in ASP, AMP, or BP for Any of Your Physician-Administered Drugs.
2. All Documents that Relate to Any Industry Custom or Practice in regard to payment, reimbursement, or recoupment of Credit Card Processing Fees in connection with the sale or distribution of Any drug.
3. All Documents in Your possession that Relate to Any practice or potential practice Concerning credit card payments for Physician-Administered Drugs, including but not limited to:
    a. With respect to Any of Your Physician-Administered Drugs, whether to sell directly to Physician Practices or through a Distributor or Any other third party;
    b. Whether to accept credit cards as a method of payment from Physician Practices for Any of Your Physician-Administered Drugs;
    c. Whether to require Distributors to accept credit cards as a method of payment from Physician Practices for Any of Your Physician-Administered Drugs;
    d. With respect to Any of Your Physician-Administered Drugs (whether individually or collectively), whether to charge Physician Practices that paid with credit cards the same price charged to Physician Practices that paid in cash;
    e. With respect to Any of Your Physician-Administered Drugs (whether individually or collectively), whether to require Distributors to charge

Physician Practices that paid with credit cards the same price charged to Physician Practices that paid in cash;

f. Whether to reimburse Distributors for Credit Card Processing Fees for Any of Your Physician-Administered Drugs;

g. Any changes to Your practices concerning whether to accept credit cards as a method of payment from Physician Practices; require Distributors to accept credit cards as a method of payment from Physician Practices; charge the same price for a given Physician-Administered Drug, irrespective of payment method, or require distributors to do the same; and/or reimburse Distributors for Credit Card Processing Fees.

4. All Documents in Your possession that Relate to the payment, reimbursement, or recoupment of Credit Card Processing Fees in connection with the sale of Any of Your Physician-Administered Drugs. This request Includes, but is not limited to, documents prepared by You or by third-party consultants, including: presentations, memoranda, talking points, notes, market or competitor research, brand plans, or strategic plans that reflect a desire or preference to purchase Any of Your Physician-Administered Drugs with a credit card or Relate to Credit Card Processing Fees, or a decision by You to pay or reimburse Any Distributor or Physician Practices for Credit Card Processing Fees.

5. All Documents that Relate to Any Communication between You and Any Distributor or Credit Card Company regarding the actual or potential payment, reimbursement, or recoupment of Credit Card Processing Fees.

6. All Documents exchanged between You and Any Physician Practices who purchased Any of Your Physician-Administered Drugs, either directly from You or indirectly

through a Distributor or Any other third party, Relating to Credit Card Processing Fees, Including but not limited to the reimbursement, coverage or payment of Credit Card Processing Fees.

7. All Documents that Relate to Any discussion between You and Any Credit Card Company regarding the payment, reimbursement, or recoupment of Credit Card Processing Fees, Including but not limited to the treatment of Credit Card Processing Fees for ASP, AMP, or BP purposes.

8. All Distribution Agreements in Your possession that Relate to Credit Card Processing Fees, Including but not limited to the reimbursement, coverage, or payment of Credit Card Processing Fees. This request Includes Documents Relating to negotiations or drafts of Distribution Agreements that reference or Relate to Credit Card Processing Fees.

9. For any of Your Physician-Administered Drugs where Physician Practices had the option to purchase using a credit card, Including whether purchased directly from You or through a Distributor:

   a. Documents sufficient to identify All purchase transactions for each of Your Physician-Administered Drugs that includes information including product, buyer, Distributor, date of purchase, units sold, price, total sales, method of payment, Credit Card Processing Fees paid or reimbursed for each transaction, and, where applicable, who paid the Credit Card Processing Fee.

   b. All Documents that track, account, or compile data on Credit Card Processing Fee reimbursements.

c. This request Includes Documents sufficient to identify whether Any purchase was made with a credit card.

10. All Documents in Your possession Concerning the marketing and promotion of Any of Your Physician-Administered Drugs that Relates to Credit Card Processing Fees, Including but not limited to the reimbursement, coverage, or payment of Credit Card Processing Fees. This request Includes but is not limited to (a) Any Communications, market research, or analysis regarding the preference of purchasers to use credit cards, and (b) Any Documents utilized by Your Reimbursement Employees Concerning the reimbursement, coverage, or payment of Credit Card Processing Fees.

11. All Documents in Your possession Relating to the treatment of the payment, reimbursement, or recoupment of Credit Card Processing Fees for any purchase of Any of Your Physician-Administered Drugs in ASP, AMP, and/or BP. This request Includes but is not limited to Your Reasonable Assumptions Concerning Credit Card Processing Fees.

12. All Documents in Your possession Relating to physicians' economic or financial considerations or preferences Related to the payment, reimbursement, or recoupment of Credit Card Processing Fees for Any of Your Physician-Administered Drugs.

13. All Documents Concerning whether Credit Card Processing Fees are Bona Fide Service Fees in Any context.

14. All Documents Concerning whether Credit Card Processing Fees are Price Concessions in Any context.

15. All Documents Concerning whether Credit Card Processing Fees should be included in or excluded from ASP, AMP, or BP in Any context.