UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, et al.,
ex rel. JULIANNE NUNNELLY and
MATTHEW SHANKS

Plaintiffs,

v. CIVIL ACTION NO. 20-11401-PBS

REGENERON PHARMACEUTICALS, INC.,

Defendant.

MEMORANDUM AND ORDER ON EYEPOINT, INC.'S;
OCULAR THERAPEUTIX, INC.'S; AND NOVARTIS PHARMACEUTICAL
CORPORATION'S MOTIONS TO QUASH SUBPOENAS. (##295, 316, 328.)

KELLEY, U.S.M.J.

## I. Introduction.

This is a *qui tam* action in which the United States alleges that Defendant Regeneron Pharmaceuticals, Inc. ("Regeneron") fraudulently reported the average sales price ("ASP") of its drug, Eylea, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A) & (B) and is liable for unjust enrichment.

Before the court are three motions to quash filed by non-parties EyePoint, Inc. ("EyePoint"), Ocular Therapeutix Inc. ("Ocular) and Novartis Pharmaceutical Corporation ("Novartis") (collectively the "Non-Party Manufacturers"), whom Regeneron served with subpoenas. (##295, 316, 328.) For the reasons set out below, the court grants in part and denies in part the Non-Party Manufacturers' motions to quash.

## II. Background.

Regeneron manufactures Eylea, a physician-administered injection that treats macular degeneration and other ophthalmological conditions. (#58 ¶¶ 1, 3.) Regeneron primarily sold Eylea to third-party distributors who sold to medical practices. *Id.* ¶¶ 4, 46-47. After a medical practice prescribed and administered Eylea to a patient, the practice would submit a reimbursement claim to Medicare (or another payor) in a process known as "buy and bill." *Id* ¶ 4.

Medicare Part B reimbursed medical practices for Eylea at a rate based on its average sales price ("ASP"). *Id.* ¶¶ 5, 25. The Centers for Medicare and Medicaid Services ("CMS") required that Regeneron report Eylea's ASP quarterly. *Id.* ¶ 5; 42 C.F.R. § 414.804(a)(5). Very basically, a drug's ASP was its total sales divided by total number of units sold per quarter. 42 U.S.C. § 1395w-3a(c)(1)(A)-(B). CMS's regulations required that a manufacturer deduct "price concessions" when calculating a drug's ASP. 42 C.F.R. § 414.804(a)(2). Those price concessions included various discounts, free goods, and rebates. *Id.* Price concessions did not include "bona fide service fees" which are "itemized service[s] actually performed on behalf of the manufacturer that the manufacturer would otherwise perform (or contract for) in the absence of the service arrangement, and that are not passed on in whole or in part to a client or customer of an entity, whether or not the entity takes title to the drug." *Id.* §§ 414.804(a)(2)(ii), 414.802.

The government has alleged that Regeneron fraudulently inflated Eylea's ASP by failing to deduct credit card fee reimbursements it made to distributors, which the government contends were price concessions. (#58 ¶ 2.) When medical practices bought Eylea from distributors, those distributors did not charge the medical practices credit card processing fees. (#58 ¶¶ 49-51.) Regeneron would then reimburse the distributors for any credit card processing fees the distributors incurred from selling Eylea. (#58 ¶¶ 49-51, 64-65.) Regeneron did not account for the credit card fee reimbursements in calculating Eylea's ASP. *Id.* ¶ 90. It is Regeneron's position that

the credit card fee reimbursements were bona fide service fees or, at the very least, that it believed them to be.

III. Relevant Procedural History.

Regeneron has served or attempted to serve approximately seventeen pharmaceutical manufacturers, none of whom are parties to this action, with subpoenas seeking documents concerning credit card reimbursements, ASP calculations, and whether such reimbursements are a standard industry practice. (#311 at 8.) Those manufacturers include the Non-Party Manufacturers. (##295, 316, 328.)

The first Non-Party Manufacturer, EyePoint, moved to quash on March 20, 2026. (#295.) The two others, Ocular and Novartis, followed suit on May 1, 2026, and May 6, 2026, respectively. (##316, 328.) The Non-Party Manufacturers, Regeneron, and the government (who filed a Statement of Interest) thoroughly briefed the motions and submitted numerous exhibits.[1] (##296, 308 [under seal], 311, 312, 317, 319 [under seal], 329, 335 [under seal], 342, 347 [under seal], 361, 365, 372, 377, 381 [under seal], 396, 409.) On June 15, 2026, the court held a hearing on the three motions to quash and took the matters under advisement. (#384.)

IV. Legal Standards.

A. Subpoenas.

"A third-party subpoena is subject to the relevance and proportionality requirements of [Fed. R. Civ. P.] 26(b)(1)." *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 158 (D. Mass. 2022) (Cabell, U.S.M.J.). Per Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

[1] District Judge Saris referred each of the motions to quash to this court. (##300, 334, 336.)

of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "[Federal] Rule [of Civil Procedure] 45(d), in turn, requires this court to 'quash or modify a subpoena' that 'subjects a person to undue burden.'" *Solamere*, 621 F. Supp. 3d at 158 (quoting Fed. R. Civ. P. 45(d)). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

### B. FCA.

To prevail on its FCA claim, the government must prove that Regeneron "(A) knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim[.]" 31 U.S.C. § 3729(a)(1). The false claim or statement must be material. *Guilfoile v. Shields*, 913 F.3d 178, 187 (1st Cir. 2019).

## V. Discussion.

### A. Relevance.

According to the Non-Party Manufacturers and government, the documents Regeneron seeks are irrelevant because other manufacturers' confidential practices, unknown to Regeneron at the time the government has alleged it violated the FCA, have no bearing on whether Regeneron knowingly made or presented false and material claims or statements. *See*, *e.g.*, #296 at 7-9; #311 at 9-15. Regeneron responds that industry practice, evidence of which its subpoenas seek, is relevant to the FCA's falsity, materiality, and scienter requirements. *See*, *e.g.*, #335 at 10-19 [under seal]. It insisted at the hearing that such evidence is relevant, even if Regeneron was not aware of

the Non-Party Manufacturers' practices when it excluded credit card fee reimbursements from its ASP calculations.

The industry practice evidence Regeneron seeks is irrelevant to falsity. Falsity, unlike scienter, is an objective analysis. How others interpret a regulation has no bearing on falsity because it is a "black-and-white, objective issue." *United States ex. Rel. Streck v. Eli Lilly and Company*, 152 F.4th 816, 841 (7th Cir. 2025); *see also United States ex rel. Sheldon v. Allergan Sales, LLC,* 170 F. 4th 227, 245 (4th Cir. 2026) ("[F]alsity is an objective inquiry.").

Nor is industry practice relevant to materiality, defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," *see* 31 U.S.C. § 3729(b)(4), because drug reimbursement rates have the "natural tendency to influence" the reimbursor's actions.[2] *Massachusetts v. Mylan Lab'ys*, 608 F. Supp. 2d 127, 153 (D. Mass. 2008) (interpreting the materiality element of the Massachusetts False Claims Act); *see United States ex rel. Hueseman v. Pro. Compounding Centers of Am., Inc*., 664 F. Supp. 3d 722, 748 (W.D. Tex. 2023) (applying *Mylan*, 608 F. Supp. 2d. at 153[3] to an FCA claim). Third-party evidence would not change the fact that alleged failure to accurately report price concessions in a manufacturer's ASP increases the amount that Medicare pays for the drug, which is inherently material. *See Hueseman,* 664 F. Supp. 3d at 748.

---

[2] Regeneron's theory that the government accepted its practice (*see United States ex rel. Escobar v. Universal Health Servs., Inc*., 579 U.S. 176, 181 (2016)) it too attenuated from the sweeping non-party discovery it seeks. Moreover, many of the documents Regeneron seeks are the Non-Party Manufactures' confidential internal documents which would be irrelevant to what the government knew and accepted.

[3] The court in *Hueseman*, 66 F. Supp. 3d at 748, appears to have erroneously cited "*Mylan Labs*, 357 F. Supp. 2d at 321" which is one of several published decisions in the *Mylan* case. The citation that corresponds to the parenthetical in *Hueseman*, 664 F. Supp. 3d at 748, is *Mylan*, 608 F. Supp. 2d. at 153.

The question remains whether industry practices can be relevant to scienter. The government[4] argues that industry practice is not relevant, since Regeneron was not aware of other manufacturers' practices. (#311 at 2, 14.) To be liable under the FCA, a defendant must act "knowingly." 31 U.S.C. § 3729(a)(1). "Knowingly" is includes (i) actual knowledge, (ii) "deliberate ignorance of the truth or falsity of the information," or (iii) "reckless disregard of the truth of falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The relevant analysis is "what the defendant thought when submitting the false claim—not what the defendant may have thought *after* submitting it." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023) (emphasis in original). The government argues that as Regeneron "had no contemporaneous knowledge" about what other drug companies were doing at the time of the alleged misconduct, such information "has no bearing on whether Regeneron is liable under the FCA for submitting" false ASP reports. (#311 at 15.)

Regeneron argues that the way in which other manufactures interpreted 42 C.F.R. §§ 414.804(a)(2), 414.802 could be relevant to whether Regeneron knowingly misinterpreted the regulations, citing *United States ex rel. Patzer v. Sikorsky Aircraft Corporation*, 722 F. Supp. 3d 839, 854 (E.D. Wisc. 2024). *See*, *e.g.*, #335 at 14 [under seal]. The Non-Party Manufacturers and government rely primarily on *SuperValu* to maintain that industry practice has no bearing on the FCA's knowledge requirement. *See*, *e.g.*, #296 at 8; #311 at 14; #329 at 11. If a defendant knowingly (as defined by 31 U.S.C. § 3729(b)(1)(A)) submits a false claim, "it does not matter whether some other, objectively reasonable interpretation of [the relevant regulation] would point to" the defendant's claims being true. *SuperValu*, 598 U.S. at 757. A defendant therefore cannot

[4] The government filed a "Statement of Interest" (#311) and also argued at the oral argument on the motions at issue here. Regeneron asks the court to strike the government's filing (#335 at 9 [under seal]) but the court declines to do so.

use evidence of objective reasonableness to retroactively defeat a finding that he or she acted with subjective knowledge.[5] *Id.* at 748, 757. Regeneron responds that "evidence of 'the prevailing knowledge in the industry' is 'relevant to the scienter element' because if a 'typical participant' in the industry would have reached the same interpretation, 'then it is more probable that defendants' witnesses are telling the truth when they testify that they did not think' their practice was improper." (#335 at 14 [under seal]) (citing *Patzer*, 722 F. Supp. 3d at 854).[6]

Evidence that the Non-Party Manufacturers interpreted 42 C.F.R. §§ 414.804(a)(2), 414.802 in the same way that Regeneron did, even unbeknownst to it, could support Regeneron's theory that it subjectively believed it had correctly interpreted the regulations to allow it exclude credit card fee reimbursements from Eylea's ASP. *See Patzer*, 722 F. Supp. 3d at 854 (finding that industry practice may be "relevant to the question of whether, in the first place, [a] defendant[] subjectively believed that [it] had" complied with the relevant regulation). Regeneron is therefore entitled to some narrow discovery on whether the Non-Party Manufacturers interpreted the regulations to permit excluding credit card fee refunds for their own buy and bill drugs.[7]

B. <u>Burden.</u>

---

[5] Unlike the Supreme Court in *SuperValu*, 598 U.S. at 747-48, this court does not assume that Regeneron subjectively believed that it had misinterpreted the relevant regulations.

[6] Whether or not the regulations relevant to this case are ambiguous is still an open question. *United States v. Omnicare, Inc.*, therefore, does not prevent Regeneron from seeking industry practice evidence. No. 15 CIV. 4179 (CM), 2025 WL 2388288, at *5 (S.D.N.Y. Aug. 18, 2025) ("In [*Patzer*, 722 F. Supp. 3d at 854], the regulation at issue was ambiguous. Here, there is no legal or regulatory ambiguity.")

[7] The parties argue at length over what District Judge Saris meant in her Order on the Motion to Dismiss (#173 at 18) and at a hearing in December 2025. *See*, *e.g.*, #335 at 1-2 [under seal]. It appears, based on the transcript of the December hearing, that District Judge Saris understands industry practice to be relevant. *See*, *e.g.*, #274 at 54 ("Yes, that's the core issue here. And in particular, if I remember correctly struggling with is, what was industry practice? What was industry expectation? What did the competitors do?").

The Non-Party Manufacturers all also claim that complying with the subpoenas would be unduly burdensome, particularly because they are not parties to the litigation. None, however, have identified any specific burden other than that complying would be difficult. The Non-Party Manufacturers' general claims of burden do not excuse them from producing documents at all. *See In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013) (Boal, U.S.M.J.). But because the Non-Party Manufacturers have no interest in this action, the burden of production does warrant some cost sharing with Regeneron. *See Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008).

VI. Conclusion.

For the reasons discussed above, the court allows in part and denies in part the Non-Party Manufacturers' motions to quash. Regeneron may seek industry practice information from no more than ten of manufacturers it has already served with subpoenas and may not serve any more manufacturers.[8] Regeneron and the manufacturers it selects should meet and confer no later than September 7, 2026, to negotiate the least intrusive means of answering the following narrow question: Did the manufacturer include credit card fee reimbursements in the ASP calculations for its buy and bill drugs between January 1, 2020, and March 28, 2024? Regeneron and the manufacturers it selects shall also devise a cost sharing scheme.

August 24, 2026

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge

[8] *See* #311 at 8.